[S. F. No. 12641. In Bank.—July 19, 1929.]

THE WEBSTER MFG. COMPANY, etc. (a Corporation), Plaintiff and Respondent, v. CHARLES W. BYRNES et al., Defendants and Appellants.

CHARLES W. BYRNES, Cross-Complainant and Appellant v. THE WEBSTER MFG. COMPANY (a Corporation), Cross-Defendant and Respondent.

H. H. McPike, James F. Peck, Clarence M. Hawkins, W. B. Bunker and Peck, Bunker & Peck for Appellants.

Harrison S. Robinson and Clark, Nichols & Eltse for Respondent.

Harry L. Price and R. W. Macdonald, *Amici Curiae.*

PRESTON, J.—Action to determine adverse claims to certain real property, formerly used as a warehouse, situated in Alameda County. Defendants answered by denial of the asserted claim of ownership by plaintiff. Defendant Charles W. Byrnes in addition cross-complained against plaintiff, alleging ownership of said property in himself. To this issue plaintiff interposed a denial. Plaintiff had judgment as prayed for. Defendants have appealed. The facts are undisputed.

On and prior to March 21, 1925, Western Milling Company, later named Oakland Terminal and Elevator Corporation, was admittedly a public utility, to wit, a warehouse, under the Public Utilities Act of California, section 2 (aa) (Deering's Gen. Laws, Act 6386, p. 2683). Said concern being involved financially, three sets of its creditors sat down with it on said above-mentioned day and composed their several demands against it, settling between themselves the matter of priority of their respective claims and agreeing upon a system of providing security for them. As a result three promissory notes, each payable in less than twelve months, were executed by the corporation, the first to plaintiff for the sum of $210,000, the second in a similar amount, and the third and last one for $200,000, in favor of defendants Williams, Hawkins and Wholey. To secure the payment of these several notes three deeds of trust were executed by said public utility covering the real property in dispute and perhaps as well some personal property then in use as a part of the operating equipment of said concern.

It was stipulated that the several notes and deeds of trust when completed should be deposited in escrow and the deeds of trust recorded in the order above mentioned and they were in fact so filed for record by the escrow party.

On or about February 24, 1926, the beneficiaries under said third deed of trust assigned their note, carrying said security therefor, to defendant Charles W. Byrnes, who on said date abandoned the security for said debt and filed an action at law against said public utility, causing a writ of attachment to be issued and levied upon the real property, the subject of this suit. On April 20, 1926, said Byrnes was awarded judgment, defendant having defaulted, and thereafter on May 25, 1926, the sheriff sold under execution the said real property, subject to redemption, and the said Charles W. Byrnes became the purchaser thereof. On May 11, 1926, however, after due notice given, the trustee named in the first deed of trust sold the real property, the subject of this action, pursuant to the terms of said security and thereafter plaintiff in this action became the purchaser thereof. Under this situation the plaintiff here and said Byrnes became rival claimants to said property, plaintiff claiming under the sale under said trust deed and defendant Byrnes under said execution sale. Soon thereafter and prior to October 6, 1926, the present action was instituted.

The proceeding under which plaintiff claims and the proceeding under which defendant claims are both regular on their face; hence, if the proceeding under the deed of trust is valid, it is prior in time and first in right. Defendants assert that the deed of trust is void because made without the consent of the Railroad Commission. Secondly, they claim that the note is void in part because a portion of the consideration was for operating expense, which is forbidden, it is said, and the remainder of the note is for a refund of previous indebtedness and, being made without the consent of the commission, is likewise void. To these claims of invalidity is added the further contention that plaintiff, being a foreign corporation and therefore without ability to operate a public utility, was without power to lawfully purchase at said trustee's sale. These several contentions will now be considered.

The pertinent provisions of said Public Utilities Act, as they read on March 21, 1925, are as follows: Section 51 (a):

"No railroad corporation, street railroad corporation, pipe line corporation, gas corporation, electrical corporation, telephone corporation, telegraph corporation or water corporation, shall henceforth sell, lease, assign, mortgage or otherwise dispose of or encumber the whole or any part of its railroad, street railroad, line, plant or system, necessary or useful in the performance of its duties to the public . . . without having first secured from the commission an order authorizing it so to do. . . . "

Section 52 (a): "The power of public utilities to issue stock and stock certificates, and bonds, notes and other evidences of indebtedness and to create liens on their property situated within this state is a special privilege, the right of supervision, regulation, restriction and control of which is and shall continue to be vested in the state, and such power shall be exercised as provided by law and under such rules and regulations as the commission may prescribe."

Section 52 (b): "A public utility may issue stock and stock certificates, and bonds, notes and other evidences of indebtedness payable at periods of more than twelve months after the date thereof, for the following purposes and no others, namely, for the acquisition of property, or for the construction, completion, extension or improvement of its facilities, or for the improvement or maintenance of its service, or for the discharge or lawful refunding of its obligations, or for reimbursement of moneys actually expended from income or from any other moneys in the treasury of the public utility not secured by or obtained from the issue of stocks or stock certificates, or bonds, notes or other evidences of indebtedness of such public utility, for any of the aforesaid purposes except maintenance of service and replacements, in cases where the applicant shall have kept its accounts and vouchers for such expenditures in such manner as to enable the commission to ascertain the amount of moneys so expended and the purposes for which such expenditure was made . . . provided, that such public utility, in addition to the other requirements of law, shall first have secured from the commission an order authorizing such issue and stating the amount thereof and the purpose or purposes to which the issue or the proceeds thereof are to be applied. . . . A public utility may issue notes, for proper purposes and not in violation of any provision of this act, or any other

act, payable at periods of not more than twelve months after the date of issuance of the same, without the consent of the commission, but no such note shall, in whole or in part, be refunded by any issue of stock or stock certificates, or bonds, notes of any term or character or any other evidence of indebtedness, without the consent of the commission.''

Section 52 (d) : ''All stock and every stock certificate, and every bond, note or other evidence of indebtedness, of a public utility, issued without an order of the commission authorizing the same then in effect, shall be void. . . . ''

Under section 51 (a) certain specific public utilities therein enumerated can neither sell, lease nor encumber their property without the consent of the Railroad Commission. While warehouses have always been classified as public utilities they were not until the legislation of 1927 brought under the operation of this section; hence, we have reached the conclusion that on March 21, 1925, certain public utilities, of which the Western Milling Company was one, unless by other provisions of said act prohibited, might sell, lease or encumber their operative property without the consent of the Railroad Commission.

Under section 52 (a) we find a declaration of the fundamental policy behind this character of legislation and from this announcement we gather that the power of the legislature over the issuance of indebtedness and over the creation of liens is plenary if asserted, and we even find authority for the promulgation of regulations upon this subject by the commission itself.

Under section 52 (b) we find no limitation upon sales or leases of a public utility, but we do find a limitation upon the authority of any public utility to issue long-term bonds, notes and other evidences of indebtedness without the consent of the commission, and we further find that such indebtedness may be incurred only for certain specified purposes. In the same section, however, we find a provision allowing temporary financing by the execution of short term notes, to wit, notes payable in not more than twelve months, the language in this behalf being: ''A public utility may issue notes, for proper purposes and not in violation of any provision of this act, or any other act, payable at periods of not more than twelve months after the date of issuance

of the same, without the consent of the commission, but no such note shall, in whole or in part, be refunded by any ٠ . . . notes of any term or character or any other evidence of indebtedness, without the consent of the commission.''

Coupling this last provision with the above-quoted provision of section 52 (d), which is to the effect that every note or other evidence of indebtedness issued without order of the commission, is void, we have the question squarely presented: Is a deed of trust given without the consent of the Railroad Commission to secure a valid short term note of a public utility, of a class other than those mentioned in section 51 (a), void because forbidden by section 52 (d) or any other provision of said Public Utilities Act?

We find nothing at any place in said act to compel or even make logical any such conclusion. While a deed of trust may truly be secondary evidence of indebtedness, it is not the debt itself but at most is but ancillary to it, to wit, security for its payment. It could not be said that if a note was secured by a deed of trust or mortgage that there had thereby been created two debts. The expression ''other evidence of indebtedness'' found in section 52 (b) means such evidence of indebtedness as is ''payable'' at periods in the future. Is a deed of trust, divorced from the debt secured by it, payable at any period? Certainly not. It is not necessary that a deed of trust or mortgage contain a covenant to pay and if it does so contain such covenant, it would then be both an evidence of indebtedness and a deed of trust. A note and the mortgage or deed of trust to secure it is one debt and one transaction.

Considerable light is shed upon this question by the provisions of section 52 (a), where we find the issuing or creation of indebtedness separately segregated from the expression ''and to create liens on their property,'' and thus we have a legislative recognition that the former does not include the latter. No reason exists for giving the same expression any broader or different meaning when it is met in section 52 (d). Indeed, the language of that section, if given its literal import, would clash with the above considered portion of section 52 (b) relating to short term notes, for said literal language is '' . . . every . . . note . . . shall be void. . . . ''

Much authority has been cited by counsel on both sides intended to throw light upon the question of whether a deed of trust or mortgage is included within the term "evidences of indebtedness." We doubt not that circumstances might exist where it would be proper to hold that a mortgage or a deed of trust was included in the said phrase, but in the act we are considering such is plainly not the case. We are pointed to the fact that in several of the states of the Union having acts similar to our own, a distinction between the two expressions is maintained. In *Barry* v. *Snowden,* 106 Fed. 571, a proper distinction, in harmony with our conclusion, is pointed out. The same is true of *Wood* v. *Williams,* 142 Ill. 269 [34 Am. St. Rep. 79, 31 N. E. 681], and *Schifferstein* v. *Allison,* 123 Ill. 662 [15 N. E. 275, 276.]

In fact, we reach the same conclusion by an application of the rule of *ejusdem generis* from which it must be concluded that by the use of the word "other" was meant such "evidences of indebtedness" as had preceded it, to wit, bonds, notes, etc. (*People* v. *Chretien,* 137 Cal. 450 [70 Pac. 305] ; *In re Johnson,* 167 Cal. 142, 145 [138 Pac. 740].)

The right of contract is by the statute abridged to a certain extent and no reason exists for making an application of the statute not plainly warranted by the language employed in it. In fact, these provisions should receive a reasonable interpretation in the light of the purposes sought to be accomplished by them. (*Southern Sierra Power Co.* v. *Railroad Com.,* 205 Cal. 479 [271 Pac. 747].)

Our conclusion, therefore, is that under section 51 (a) certain public utilities may not under any circumstances encumber their property without proper consent of the commission; that under section 52 (b) long-term indebtedness may not be created without consent of the commission and this of course, would mean that a deed of trust, if given to secure such indebtedness, would also require such consent for in that case the security would be an incident to the issuance of the obligation; but as to short-term notes of a public utility not mentioned in section 51 (a), if executed for proper purposes and not as a refund of previous short-term notes, neither the issuance thereof nor the giving of security as an incident thereto, requires the consent of the Railroad Commission. This seems to be the plain legislative intent and creates no friction between the various

sections under consideration. The most that it does is to require that section 52 (d) be held applicable only to such stock, stock certificate, bond, note or other evidence of indebtedness as the law requires to have the consent of the Railroad Commission.

This holding is also consonant with reason, for without the consent of the commission liens and encumbrances might be imposed upon the property of a public utility by attachment, execution and perhaps other methods, and if this could be done without the consent of either the commission or the public utility, why could not the utility voluntarily pledge or encumber its property as security for such debt? The ability to pledge or encumber might be the only method by which a concern of this type could secure the credit necessary to survive. The very fact that defendant Byrnes, without the consent of the commission, could abandon his deed of trust and secure attachment and execution liens argues strongly for the power in the debtor to voluntarily create such a lien in a case where the consent of the commission is not necessary to the creation of the indebtedness.

But our inquiry takes us to a consideration of the note in this case. The first contention is that the words ''for proper purposes'' found in section 52(b), when applied to short-term notes, must be construed to have the same meaning as is embraced in the specific purposes thereinabove pointed out respecting long-term notes and no others; or, in other words, that this phrase excludes the issuance of short-term notes to defray operating or current expenses and that a portion of the note in question was issued for this purpose. If such was the legislative intent, it could have been easily stated and the matter not left in doubt. But here again we are asked to abridge the right of contract and plain warrant should be found in the language of the statute for so doing. The object of long-term obligations is usually very different from the object of short-term obligations. The usual purpose of such obligations is to build up a permanent capital investment. The issuance of short-term notes is for emergency or temporary financing. The right even to the extent of obtaining funds for current expenses may be of vital importance to the corporation. We therefore conclude that in the absence of a plain declaration to the contrary that ''proper purposes'' means any outlay necessary or proper

to promote the legitimate objects of a public utility of the type concerned and that such a note may properly be issued for current expenses; hence, so much of the note held by plaintiff as represents money borrowed for current expenses is valid.

 Next, it is claimed that the note is void because the other items therein contained are a mere refund of existing obligations and hence the consent of the commission to its issuance was required. It is to be noted that the short-term obligation authorized by section 52(b) is a note. No other evidences of indebtedness are enumerated. It is also to be noted that with respect to the matter of refunding the refunding is of a note previously issued as a short-term note and is not the mere recasting of every kind of a previous obligation. In the case before us the note in question was largely given for the following purposes: At the time it was executed the public utility was in a maze of financial entanglements. Plaintiff had judgments against it aggregating some $130,000 upon which execution sales had resulted at which plaintiff had become the purchaser and the time for redemption was fast expiring. In addition, the public utility was liable to plaintiff upon obligations of various types in the amount of this note, $210,000. To these were added the debts secured by the two junior deeds of trust. The utility was making one final effort to extricate itself. The deed of trust to plaintiff here in question was the result of a compromise and concessions on the part of plaintiff. It gave the utility respite for a period of nine months. The consideration for this note in addition to the items therein for operating expenses was:

Former notes secured by former mortgages and deeds of trust upon said real property that had been placed thereon by the predecessors in title and assumed by the public utility as a part of the purchase price of the property and this before it ever became a part of the operative property of the utility. These obligations had fallen into the hands of plaintiff. In this connection, large sums were paid for taxes and insurance and these were authorized under the mortgages and deeds of trust and these sums in the same way became a part of this note. To this should be added a large amount for the completion of title to machinery and equipment purchased under conditional sale contracts and upon the execu-

tion of the note and security, full title was placed in the utility. While these several items are previous indebtedness we cannot see that they are short-term notes of the utility which were by the note in question refunded. The object of this provision of said act was evidently to forbid the circumvention by an endless chain process of the requirement as to consent for long-term notes, but we cannot see that the prohibition is leveled at the transaction here disclosed.

Moreover, so long as any material portion of said note is valid and severable, any illegal portion thereof would not avail defendants in this action as the note would be *pro tanto* valid and the deed of trust to secure same would likewise be valid and, of course, a regular sale thereunder would pass the title to the property. (*Haines* v. *Commercial Mortgage Co.*, 200 Cal. 609 [53 A. L. R. 725, 254 Pac. 956, 255 Pac. 805]; *Jackson* v. *Shawl*, 29 Cal. 267; *Innes* v. *Goldwater*, 30 Cal. App. 101 [157 Pac. 18]; *Grainger* v. *Original Empire Mill & Min. Co.*, 59 Cal. 678.)

Lastly, we are to consider the contention that under section 26 of said Public Utilities Act a foreign corporation, not previously engaged in a public utility business, may not carry on any such business in California and, therefore, could not purchase at the trustee's sale under said deed of trust. In the first place, as to the public utility here involved, a certificate of convenience and necessity was not at the time in question required to enter such business nor was the consent of said commission required to discontinue said business. It is difficult, therefore, to come to the conclusion that a creditor may not purchase foreclosed property in order to secure payment of the indebtedness to him. The fact that this corporation purchased the encumbered property at the sale is no proof of its intention to operate the public utility. It might transfer the property to a person qualified to engage in that business or it might use the property for some other legitimate business. Besides, inasmuch as the statute does not declare a purchase by such a corporation void, an objection of this kind lies alone with the people of the state of California and is not a question that defendants can avail themselves of. (*Spring Valley W. W.* v. *San Francisco*, 22 Cal. 434, 439; *Blochman Commercial Bank* v. *F. G. Investment Co.*, 177 Cal. 762 [171 Pac. 943]; *McCann* v. *Children's Home Soc.*, 176 Cal. 359 [168 Pac. 355].)

It follows from the above that the action of the court below was proper and its judgment is hereby affirmed.

Richards, J., Curtis, J., Seawell, J., and Waste, C. J., concurred.

Rehearing denied.

All the Justices present concurred.