[L. A. No. 12822. In Bank.—January 2, 1934.]

EDITH SHIMPONES, Respondent, v. JEFFERSON K. STICKNEY, Jr., et al., Appellants.

Wright & McKee and C. M. Monroe for Appellants.

Edward J. Kelly for Respondent.

SEAWELL, J.—Judgment herein went for plaintiff quieting her title to the lots in suit. The petition of defendants for a rehearing and the application of Stickney, Jr., for the right to introduce evidence before this court for relief as provided by section 956a of the Code of Civil Procedure, are based upon several specific grounds of error, both of law and fact, and particularly upon the insufficiency of the evidence to justify the finding of the trial court that the defendant Jefferson K. Stickney, Jr., of the firm of Stickney & Stickney, attorneys at law, was guilty of fraud in bringing about the sale of real property at a trustee's sale, situate in the city of San Diego, this state. The cause was tried without a jury. Defendants also assail, as wholly un-

authorized by law, that portion of the judgment which, after quieting plaintiff's (trustor's) title to the trust property in suit, and decreeing that the sale made by the trustee under a trust deed executed by plaintiff was fraudulent and the deed executed thereunder by the trustee to the purchaser at said sale was null and void and of no effect, nevertheless commanded said purchaser to convey by deed said real property so purchased and to which it was decreed that the purchaser held no title, to plaintiff (trustor) "free and clear of all encumbrances which the said defendant (Linley) may have placed or caused to have placed upon said premises". This decree, if allowed to stand, would have the effect of giving plaintiff her property clear of the encumbrance she placed upon it as security for her debt.

It developed in the proceedings soon after the oral arguments were finished and before findings were prepared that other parties were interested in the subject matter of the action and that said real property had, prior to trial, by mesne conveyance passed into the hands of strangers to the action. We here set out a brief summary of proceedings as shown by the record. The closing argument in the case was made April 21, 1930. On April 29, 1930, the Honorable L. N. Turrentine, then a practicing attorney, was substituted in the place of Stickney & Stickney, John T. Hon and E. E. Hubbell, as attorneys for defendants and representing other interests. Within ten days after the closing argument Honorable L. N. Turrentine gave notice that on May 6, 1930, he would move the court for an order reopening the case for the introduction of other and additional evidence, particularly the testimony of Jefferson K. Stickney, Jr., who, it is claimed, was excusably absent at the trial, and whose testimony would have laid before the court his part in the transaction, and on the further ground that C. R. Linley, the purchaser at said trustee's sale, had borrowed from the Bay City Building and Loan Association, secured by trust deed, the exact sum, to wit, $1550, for which the property was bid in at the Linley purchase. This motion came on for hearing and was supported by affidavits setting out what appear to have been substantial reasons for the reopening of the case under the authority of section 389 of the Code of Civil Procedure, which provides that "when a complete determination of the controversy cannot

be had without the presence of other parties, the court *must* then order them to be brought in, and to that end may order amended and supplemental pleadings'', etc. (Italics supplied.) An affidavit dated May 1, 1930, showed that the property in controversy passed from Linley to said Bay City Building and Loan Association on September 4, 1929, more than six months before the motion was made to reopen the case and four months before plaintiff filed her complaint herein to quiet her title. The Bay City Building and Loan Association trust deed was recorded in the public records of the county of San Diego on September 18, 1929. Attorney Stickney, Jr., made insistent efforts to reopen the case before the cause had gone to judgment on the ground that the court had adjudged him guilty of fraud at the trial of said cause at which he was not present, based upon pleadings which gave no intimation that it was the purpose or intention of opposing counsel to stigmatize him with fraudulent practices which would be carried into the judgment. Further, that the evidence did not justify the finding that he was guilty of fraud and that such a finding was not necessary for a decision of the issue before the court. The motion to reopen the case for any purpose after trial and before the filing of findings of fact and conclusions of law was denied on May 8, 1930. ■ In view of sections 389 and 662 of the Code of Civil Procedure and other provisions of the codes enacted for the purpose of making a complete determination of controversies between litigants in one action and directing the ·bringing in of new parties when necessary or proper for a determination of a pending action, and which are to be liberally construed, to effect the object for which they were enacted, we are of the opinion that under the peculiar and somewhat confused circumstances of the case the trial court should have reopened said cause to the end that all the evidence available which would have thrown any light upon the issue of fraud could have been laid before the court. ■ The court's judgment has placed upon the reputation of Stickney, Jr., a lawyer's most valuable asset, a stigma which long years only may possibly remove, and one so characterized by a court's decree should have been fully forewarned by the pleadings that his personal and professional integrity was to become an issue at the trial of the case. Reasonable liberality should be in-

dulged in cases where it is doubtful as to whether the attorney stigmatized should have anticipated that his personal integrity would be brought into the case. Appellant Stickney claims that inasmuch as the complaint contained no allegation or charge of fraud against him, and the most that could be gathered from the complaint were allegations of procedural irregularities which voided the sale, that he should have been given an opportunity to meet squarely such evidence taken at the trial from which the inference of fraud was drawn, and repel the conclusion which followed it.

As confirmatory of appellant's contention that the case should have been reopened and new parties brought in, appellants cite the fact that another and a new action, *Southern Investment Co.* v. *Edith Shimpones et al.,* was made necessary by reason of said refusal. Southern Investment Company purchased said real property at a trustee's sale. The Bay City Building and Loan Association furnished the purchase price at the first trustee's sale, whereby the title of said property was placed in the name of Linley. Linley subsequently defaulted in the payment of his obligation and Southern Investment Company became the purchaser at the trustee's sale for the sum of $2,204.46. Edith Shimpones, formerly Edith Gonzales, refused to surrender possession, claiming title in herself. Southern Investment Company brought an action against her to quiet its title and for possession of said property.

C. M. Monroe, who was one of the attorneys for the defendants and appellants herein, and who is and was one of the attorneys for the Southern Investment Company in the action brought by said company to quiet its title against plaintiff herein and to be let into possession of said property, has given his affidavit in support of the motion herein for relief as provided by the remedial provisions of the Code of Civil Procedure. The averments of said affidavit have not been traversed or denied and they will not be controverted, as counsel for plaintiff in a letter addressed to this court states that he will not reply to the petition for a rehearing as there is nothing to be added to the briefs already on file, and for the further reason the respondent is wholly without funds. Said affidavit avers that the court in the Southern Investment Company case found that

Linley became the purchaser of said property at the first sale and that he borrowed $1500 from the Bay City Building and Loan Association, executing a deed of trust as security therefor, and having defaulted in the payment thereof said Investment Company became the purchaser at a trustee's sale thereof, paying on account of said purchase, including taxes, paving liens and other charges, the sum of $2,204.46. A judgment, interlocutory in form, was entered according to stipulation, providing for a redemption period in favor of plaintiff herein, but said period has long since expired without any attempt being made on the part of plaintiff to redeem the same. This judgment has long since become final. Said judgment, apparently acquiesced in by all parties, renders the appeal in this case, so far as the ownership of the real property is concerned, moot. This is especially true as to Stickney and Linley as said property descended by mesne conveyances from the first trustee's sale made by Stickney, Jr., to Linley, and from Linley in regular order to Southern Investment Company. This being so, defendant Linley could not be compelled to convey said property to plaintiff unencumbered, as a court of record in a direct proceeding brought by Southern Investment Company against plaintiff, involving the title to said property, quieted said company's title thereto, even before the judgment in the pending appeal herein could become final. Linley, owning no interest in said property, had nothing to convey. Neither was Stickney, Jr., injured in having the property follow a course unhampered by the decree from which this appeal was taken. Plaintiff did not pay the amount she borrowed on the property and she was not entitled to have anyone else pay it for her.

This leaves for further consideration the judgment convicting Stickney, Jr., of fraudulent practices in causing said property to be sold under the first trust deed. In determining this question it becomes necessary to relate as briefly as possible the history of the transaction. Counsel for plaintiff has spent much time and given considerable space in his brief to excoriating the Stickneys, especially Stickney, Jr. His dislike of the Stickneys is very pointedly set forth, and he does not hesitate to apply to them the term "thief" or denounce them as guilty of grand theft. It is to be regretted that counsel has given

himself over to unrestrained acrimonious denunciation of his adversary. Harsh language is not a substitute for argument entrenched in fact. Whether or not the findings of fraud are sustained must appear from the case presented. Counsel, in a letter addressed to this court, assures the court that what he has done in this matter was in obedience to his duty to a poor woman deprived of her home and not because of any personal grievance against the Stickneys. He then proceeds to inform the court that several years ago he filed a complaint against the Stickneys with the bar association. He does not state whether his charges were sustained or dismissed. We must, therefore, assume that they were not sustained. He also presented to this court as a matter material to the cause an affidavit in which he sets forth the proceedings, findings and conclusions of the local administrative committee of The State Bar for the county of San Diego, recommending the suspension of both Stickneys from the practice of the law for a period of one year. Plaintiff's counsel filed charges with said committee based upon the record and judgment entered in the instant case convicting Stickney, Jr., of a fraud. Upon said judgment the above recommendation was made. Counsel has failed to inform this court, however, that said charges preferred by him, together with the recommendation of the local administrative committee, came regularly before the State Bar governors for hearing and decision and said State Bar governors, upon due deliberation, dismissed said charges without so much as a censure. We are advised that the order of dismissal was made by the State Bar governors on September 15, 1933.

We have made a careful examination of the entire record in this case, impelled to do so largely by the serious and far-reaching effect of the judgment convicting an attorney at law of fraud, which is forcibly demonstrated by the effect it must have had upon the action of the local administrative committee in making a recommendation of suspension. The same record upon which the judgment herein is based, together with the judgment, was before the State Bar governors and that body refused to make a finding that the Stickneys were guilty of fraudulent conduct or had committed any act involving moral turpitude.

■ We now come to the consideration of the question whether the complainant, in her action to quiet title against Jefferson K. Stickney, Jr., and his co-defendants, was sufficiently specific in her allegations as to put said Stickney upon notice that he was called upon to answer charges of fraud and therefore his absence at the trial was an inexcusable disregard of the consequences which would be the natural result of a judgment for plaintiff. The general rule is that fraud must be both pleaded and proved. The complaint is in two counts. The first contains the simple and usual allegations necessary to constitute an action to quiet title. The second count alleged her ownership of the real property in controversy; that she was formerly known as Edith Gonzales but by her marriage her name was changed to Edith Shimpones; that on January 15, 1925, she executed and delivered her deed of trust to M. Hall, as trustee, in the sum of $1400, to secure her promissory note payable to Annie J. and Morris H. Lane, beneficiaries in said trust, on account of said sum which she borrowed from the Lanes; that Hall died and W. A. Olson and T. B. Middleton were appointed trustees to succeed him; that Jefferson K. Stickney, Jr., assumed to act as trustee in place of the latter, but at no time was he duly or regularly appointed, and he was wholly without authority to act as trustee.

In passing it is pertinent at this point to state that the court found that Stickney, Jr., was appointed trustee to succeed Olson and Middleton as prescribed in the deed of trust. This finding is absolutely established by the fact. He was appointed July 10, 1929. The complaint further alleges that Stickney, Jr., published a notice of sale "under and by virtue of the terms of said trust deed, but wholly without authority"; that the plaintiff was not in default; that the sale was unlawfully made; that Stickney, Jr., falsely represented that default had been made under said trust deed in that the principal sum which was "due under the trust deed on January 15, 1926, had not been paid; that said representation was false in that said principal sum was not due on January 15, 1926, nor at the time said notice of sale was published, or at any time hereafter mentioned". The principal, by the express terms of said trust deed, became due and payable January 15, 1926. The principal was long past due at the time this action was filed, and the

only open, controvertible facts before the court were as to the amount of interest due and whether or not a breach of the obligation for which the transfer in trust was made had occurred, as provided by section 2924 of the Civil Code. On February 6, 1926, Edith Gonzales had defaulted in the payment of all the installments of interest since executing the deed of trust, and the principal falling due January 15, 1926. Annie J. Lane and Morris H. Lane, the beneficiaries and holders and owners of said note and deed of trust, gave notice of default and election to sell said real property under the deed of trust. This notice of sale was given by the Lanes approximately three years before Stickney, Jr., was appointed by the Lanes trustee in said matter and it cannot be said that he inspired the filing of said notice of sale or had anything to do with the filing of said election to sell under the trust deed. The complaint further alleges that Stickney, Jr., in acting upon said notice to sell, falsely represented that the Lanes declared that default had been made and proceeded to sell and did sell said real property at public auction on August 20, 1929, without authority of law.

We have summarized the allegations of the complaint and nowhere are the words "fraud" or "fraudulently" or their equivalent to be found in the complaint. The allegation "That in and by said notice the defendant, Jefferson K. Stickney, Jr., falsely represented that the defendants Annie J. Lane and Morris H. Lane, the owners and holders of said note, did declare that default had been made and did declare the whole of said principal and interest immediately due," falls far below a definite allegation of fraud. It does no more than to allege that certain contentions or claims, or the construction placed on the notice of default, are false and untrue. There is nothing in the entire complaint that would indicate to Stickney, Jr., that he was being charged with fraud and the complaint is not framed on such a theory. Neither are the deficiencies of the complaint supplied by the allegations of the answers as contended by plaintiff.

We have referred to the pleadings thus extensively for the reason that if the allegations of the complaint were such in character as to have given notice that he would be charged at the trial with fraudulent practices he would not

be justified in absenting himself from the trial under any ordinary circumstances, and no relief would be granted to him because of his own indifference to consequences. We are of the view that there was no reason for him to anticipate that fraud would be made the gravamen of the action. It further appears from uncontradicted affidavits in support of the various motions in the cause that the trial was carried forward on a crowded ready-for-trial calendar from day to day and Stickney, Jr., had prepared to leave the city for a few days. That it seemed safe for him to leave when he did for a few days, as the state of the calendar seemed to have given assurance of time in which to return before the case went on trial, is supported by the affidavits of the Stickneys and George W. Edwards, deputy county clerk and courtroom clerk of department No. 1 in which said cause was tried. Said courtroom clerk averred that the trial day for said cause was April 8th, but the trial was continued day after day until April 18th owing to a crowded calendar. He avers that Stickney, Jr., called and made many inquiries of him as to the day when the cause would likely go to trial, and he told Stickney, Jr., that from the appearance of the calendar he did not think it could be heard for some time; that on April 18th it would probably be set for a future day certain. Stickney, Jr., filed an affidavit in which he averred that prior to the setting of the case for April 8th he had made arrangements to leave the city on April 12th and return on April 21st; that on April 16th, appellant having remained in San Diego and said cause not having been reached, affiant understood from his attorney, John T. Hon, that he had arranged with Mr. Kelly, plaintiff's attorney, that the case might be continued until April 21st, and at that time he set for the term commencing May 5th. Stickney, Jr., after four days' absence, returned to San Diego on the evening of April 21st and learned that the trial of said case had been concluded on the day he returned. The affidavits filed in support of the motion to reopen the cause in view of the finding of the court as to fraud, which could not have reasonably been anticipated as an issue from anything that appears upon the pleadings, and which we are of the opinion was not sustained by the evidence introduced at the trial, were sufficient

reasons to entitle the defendant Stickney, Jr., to the relief which he sought to obtain by his motions.

█ Plaintiff in her complaint made an offer of tender to the defendants, or such of them as the court may adjudge entitled thereto, of said principal sum of $1400 together with all interest due thereon, and all costs, penalties and sums which might be rightfully due the defendants or any or either of them by virtue of her promissory note or deed of trust, and she alleged that she was ready and willing to pay to said defendants or either of them said sum or sums upon their expression of willingness to accept the same in full discharge of her indebtedness in the premises. As she was asking that her title be quieted it was a necessary requisite that she do equity under the well-settled authority of this state. When the court's attention was called to the above tender at the close of the case plaintiff's attorney said the offer was made before "we knew this situation. Counsel knows he must come into equity with clean hands, in order to get anything. He has come in here with soiled hands and cannot have a judgment now for $1500, or any other sum." The court refused to require plaintiff to do equity and quieted plaintiff's title free of debt. Whether as a matter of fact Linley's hands were soiled and he, as the purchaser, would not have been entitled to have his title quieted had he so requested, inequitable conduct on his part or any other defendant would not have in any way removed the equitable obstacles which stood between the plaintiff and a clear equitable title. The plaintiff in a quiet title suit is not helped by the weakness of his adversary's title but must stand upon the strength of his or her own. The fatal weakness in plaintiff's position is that she did not do equity by paying her debt, but refused to pay it. Here plaintiff is appealing as an *actor* to a court of equity to obtain affirmative equitable relief and she is bound by the well-known rule that he who seeks equity must do equity. It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured. (See a long list of cases sustaining the equitable rule as variously applied collated in 10 Cal. Jur., p. 512 et seq.) It was clearly erroneous to quiet her title under the circumstances of her refusal to do equity.

■ During the trial of the case, over the objection of defendants, the files of the case of *Reavis* v. *Gus Shimpones and Edith Gonzales* were offered and received in evidence. Stickney & Stickney were the attorneys for the plaintiff. The action was to recover the price of an automobile truck which Reavis, who was an automobile dealer, had sold under a sales contract to the defendants at the price of $2,715. Shimpones and Edith Gonzales afterwards intermarried. Reavis, believing Edith Gonzales the better risk, would not sell to Shimpones unless Edith Gonzales became a party to the contract. Judgment was taken against Edith Gonzales by default. An attachment issued. The real property described in this action was included in the levy. Mr. Edward J. Kelly, attorney for Edith Gonzales, moved to vacate and set aside the default on the ground that Edith Gonzales had not been served with summons and complaint. The files of the Reavis case were offered and admitted on the theory that they were relevant to the issue of fraud in the instant case in that they would show that Stickney, Jr., made an affidavit in the Reavis case that he had personally served Edith Gonzales in that action, all of which was false and her default was thereafter set aside by reason of the falsity of said affidavit as to the service of the summons and complaint upon Edith Gonzales.

We are of the view that the files of the Reavis case were not admissible, and, if admissible, they fell far short of proving fraudulent conduct on the part of Stickney, Jr. In support of the motion three affidavits were received. Mrs. Shimpones merely averred in general terms "that she had never been *served* with summons and complaint herein; . . . that the affidavit of service upon this affiant is false and untrue". The above constitutes the whole of her averments as to service. Jennie Calles made an affidavit that the service of summons and complaint were made upon her in the presence of one Hazel Soares. She avers that she does not fully understand the English language and that a gentleman came to her on August 13, 1928 (not stating where she was or whether she was a friend or guest of Edith Gonzales), and asked her either if she was Edith Gonzales, or if she knew Edith Gonzales. To this double question, without anything further being said, she answered, "yes", and the summons and complaint were placed in her

hands. She asked for no instructions or directions. Neither she nor Mrs. Gonzales aver that the summons and complaint did not come into the hands of Mrs. Gonzales. Mrs. Calles does not state that she was or was not at the Gonzales home when she permitted herself to be served as Mrs. Gonzales.

One Hazel Soares made a six-line affidavit wherein she averred that on August 13, 1928, she was in the company of Jennie Calles (without stating where) and that a gentleman inquired of Jennie Calles as to the whereabouts of Edith Gonzales, or if said Jennie Calles knew the said Edith Gonzales, and thereupon served the said Jennie Calles with a summons and complaint. Nothing further is stated as to who the said affiants were, where they were at the time of the alleged service, or as to why Jennie Calles should be in doubt as to whether she said she was Edith Gonzales or merely said that she knew her. It is highly improbable that Stickney, Jr., after having taken the pains to go to the residence of Edith Gonzales, 2825 K Street, with the purpose of serving her, should have ended his mission in a state of mental vacuity. The averments of Jennie Calles and Hazel Soares are too inherently improbable to receive serious consideration.

Stickney, Jr., made an affidavit, convincing upon its face, in which he relates in minute detail his visit to the Gonzales residence at 2825 K Street, on August 13th, to serve Edith Gonzales with summons and complaint. He avers that he gave an alarm at the front door and as no one answered he went through a side gate to the rear door and was met by a tall, heavy man, who demanded what he wanted and being told that he wanted to see Edith Gonzales he was asked what he wanted with her. Affiant replied that he wished to see her about a matter. Thereupon the man called aloud, "Edith", and a lady appeared answering the description of Edith Gonzales as he afterwards saw her and knew her to be Edith Gonzales. Affiant asked her if she was Edith Gonzales and she answered that she was, and he pushed open the screen door and said he had a paper for her, and handed to her the summons and complaint. The woman took it and as she was looking at it the man said, "What is this?" Upon being told he grabbed the paper from her hands in an angry manner and in a loud

voice said that Edith Gonzales did not owe Jack Reavis "a damn cent", and if they wanted to do anything about the matter for Reavis to come out himself and not send anyone else out and they would show him a thing or two. Affiant averred that no one else was present but the three above mentioned.

In no conceivable way can the inference of fraud be drawn from the affidavits of Edith Gonzales and her co-affiants. If the first half of Jennie Calles' affidavit is true and she represented herself to be Edith Gonzales, she deliberately misled affiant. Such would be the natural result if Jennie Calles was at the Gonzales' home (the only place service is pretended to have been made) at the time the person whom she did not describe handed her said papers. If the court believed Jennie Calles and Hazel Soares it could not do otherwise than exonerate Stickney, Jr., of any charge or imputation of fraud in the Reavis service transaction. The files of the Reavis case, as above set forth, do not support an inference of a fraudulent attempt on the part of Stickney, Jr., to deprive the plaintiff herein of her right of defense by means of a false or improper service. The court may have believed all that affiant Calles averred as to her misrepresentation as to her identity, which in the circumstance of place was well calculated to mislead a reasonable person, and still have held Stickney, Jr., free from any charge of bad faith. In fact, such is the inference which flows from the facts.

*Reavis* v. *Gus Shimpones and Edith Gonzales* was an action to recover the sales price of an autotruck on sales contract, and involved no issue set out in the instant case. Reavis was attempting to collect on the contract from Gus Shimpones and Edith Gonzales, and they were attempting to defeat the action. The evidence offered to prove fraud does not tend to establish a conspiracy or prove a plan adopted in furtherance of a common fraudulent purpose, even if fraud had been properly pleaded.

█ We now come to the consideration of the alleged frauds and attempted frauds which have to do with the foreclosure of the trust lien. · Said deed grants broad powers to the trustee and contains the usual provisions which make the recital of the default and all other facts affecting the regularity or validity of the sale conclusive proof of

all the facts in the deed recited against the party of the first part, his heirs and assigns, etc. It is specifically urged that the sale was made without notice having been posted on the premises, which consists of a seven-room frame house, built fourteen or fifteen years before sale on a lot 50x140 feet. The sale was noticed for August 20, 1929. It is admitted that notice by publication and the other three posting notices were regularly and publicly made by C. R. Linley, but it was disputed that the notice which he testified was posted on the front door of the residence on July 30th was so posted. Edith Gonzales testified that she never saw a notice posted on the premises. This is sufficient to create a conflict as to the fact. Be this as it may, it is an incontrovertible fact that Stickney, Jr., addressed and mailed a letter to Edith Gonzales containing a notice of the election to sell said real property on August 20, 1929. The receipt of the letter accompanying the notice and which informed her that the sale would be held August 20th was admitted, but she said she did not know *when* the letter and notice was received. At any rate it was received approximately twenty °days before the sale, which is a circumstance sufficient to rebut the claim that Stickney, Jr., was surreptitiously and fraudulently plotting to despoil her of her property. There is no question as to the publication and posting of notices in three public places exceeding the statutory requirements. Neither is it claimed that she was not fully aware of the impending sale. A fraudulent purpose can hardly be said to lurk in the above set of circumstances.

Plaintiff specially stresses the fact that C. R. Linley, who is not a lawyer, but an employee of Stickney and Stickney, was the ostensible purchaser of the property on the day it was sold. Also some significance is given to the fact that Linley was not present at the sale, but the property was bid in in his name by Stickney, Sr.; also as to whether Linley was bidding in the property for Stickney, Sr., or Stickney, Jr. All of the foregoing is immaterial, as long as it did not operate to the detriment of the plaintiff, the owner of the property. A trustee may be a purchaser if he has taken no undue advantage of his trust, and bids at the sale on equal terms with all others. We are unable to find in the record anything that would justify us in holding

Stickney guilty of fraud, or that he had any designs on the property in question. No attempt whatever was made to acquire it for himself. No concealment of any material fact was attempted. In every action he was acting as an attorney on behalf of a creditor of the plaintiff.

While the purchase of property by a trustee should be carefully scrutinized, and as a general proposition the practice is not to be encouraged, especially where the purchaser is an attorney in the matter, we fail to see any fraudulent relations existing between the parties to the action. The Stickneys were representing the interests of two clients who were creditors of Edith Gonzales, afterwards Mrs. Shimpones. In the uncontradicted affidavits on file on motion to reopen the cause and for a new trial appellants have set forth their entire stewardship in attempting to protect the rights of two clients. Linley, no doubt, was acting for the Stickneys, and in no possible way could plaintiff have been injured whether Linley became the purchaser for Reavis or whether a stranger to all the parties was the purchaser. The property was sold twice and it was bid in both times for a sum equal to the debt plus interest and costs.

As we early pointed out, the case of *Southern Investment Co.* v. *Edith Shimpones,* a direct quiet title action involving the real property herein, has been called to our attention. Edith Shimpones appeared in that action and litigated her title, but final judgment after the expiration of an interlocutory judgment granting her sixty days to redeem was entered against her on October 19, 1932. Title in that action was deraigned from the Linley purchase. The judgment has long been final. This renders the title of the property in this action as between grantee Linley and his successors on the one hand and Edith Shimpones on the other a closed issue. It is conceded by counsel for plaintiff that Mrs. Shimpones has lost the property through subsequent foreclosure proceedings. Counsel for appellants likewise state that all the legal propositions involved have practically become moot. Appellants state that they do not attack the decision of this court upon which the rehearing was granted as to the irregularities in the sale, but only ask that it be modified as to the direction of the trial court commanding C. R. Linley to deed the property free and

clear of all of said encumbrances to Edith Shimpones. Second, they ask that the decree be modified by striking out and expunging the findings of fraud from the findings and judgment as not supported by the evidence. We have considered the affidavits which were filed in support of the motions, inasmuch as counsel for the plaintiffs has, for reasons stated by him, concluded that he will not file a reply to said appellants. It would serve no good purpose to formally reopen the case, inasmuch as the ownership of the property is no longer an issue. We are of the view, however, that the findings and judgment which adjudge Jefferson K. Stickney, Jr., guilty of fraudulent conduct should be expunged from said findings and judgment; also that the order which directs C. R. Linley to deed the real property described in said judgment to Edith Shimpones free of said encumbrances was beyond the power of the court to make and is null and void. Otherwise the judgment will stand as entered.

Curtis, J., Thompson, J., Langdon, J., and Preston, J., concurred.

Waste, C. J., dissented.

SHENK, J., Dissenting.—I dissent. The judgment of the majority assumes to expunge from the findings and judgment those portions thereof which find and adjudge the defendant Jefferson K. Stickney, Jr., guilty of fraudulent conduct. No finding is made by this court contrary to the findings of the trial court and I question the authority of this court to make such an order of expurgation. I agree that the record is insufficient to support the findings of fraud. The question before this court in that behalf is whether such findings are supported by the evidence. Since the findings are unsupported, the appropriate order is to reverse the judgment or to make findings contrary to the findings of the trial court and, if there be no other infirmity in the findings or judgment, to affirm the judgment on the findings so made.

In my opinion the allegations of the complaint were sufficient to place the defendant, Stickney, Jr., on notice that he was charged with fraudulent practices in the trust deed sale.

He was ready and anxious to meet those charges at the trial, and was justified in assuming that the case would not be brought on for trial during the few days of his absence from the city of San Diego. The showing made on his motion to reopen the cause to permit him to rebut, by material evidence, the inferences of fraud developed at the trial in his absence, was sufficient to support the motion and the trial court should have granted it. The failure to do so alone would require a reversal.

Again, the judgment of the majority affirms that portion of the judgment which quiets the plaintiff's title to the property, when it is conclusively shown that the plaintiff is not, and was not at the time of the trial, the owner of the property in controversy. At all events I think the judgment should be reversed, probably with directions to enter a judgment for the defendants.