[Civ. No. 15090.  First Dist., Div. Two.  Jan. 5, 1953.]

HARRY E. PITTS et al., Respondents, v. HIGHLAND CONSTRUCTION COMPANY (a Partnership) et al., Appellants.

Price, MacDonald & Knox and M. F. Hallmark for Appellants.

Hoey, Hoey, Hall & Conti for Respondents.

GOODELL, J.—Respondents sued to enjoin an impending trustee's sale under a deed of trust securing a promissory note for $4,304.21 given by respondents to appellants and with the ultimate purpose of effecting the cancellation of both instruments. A temporary injunction issued and after a trial judgment was entered decreeing that the note be de-

livered up for cancellation and the deed of trust released of record. A new trial was denied and this appeal was taken.

Plaintiff, a World War veteran, owned a parcel of land in Contra Costa County on which he desired to build a four-room home by availing himself of a "G. I." loan.

He applied to the Walnut Creek Branch of American Trust Company, which agreed after the usual processing to lend him $8,975 on a first deed of trust, $4,000 of which would be insured or guaranteed to the bank by the Veterans' Administration. The $8,975 figure was based on an estimate made by an appraiser designated by the Veterans' Administration fixing the reasonable value of the land plus the proposed dwelling (according to Pitts' plans) at $11,475. As a condition to its loan the bank required a contract between a responsible builder and the owner fixing a definite cost price. Pitts then laid the matter before Osmundsen, by whom he was then employed as foreman carpenter, who agreed to enter into such contract with him. On May 24, 1948, a "builder's contract" was drawn up on a printed form (filled in with typewriting) signed by Pitts as owner, and Highland Construction Company as contractor, whereby the contractor agreed within the space of 150 days "from and after approval by lending agency and authorization to commence work to supply the necessary labor and materials required, and furnish and supply all necessary tools, implements and appliances, and perform and complete in a workmanlike manner the following described building or other work, to-wit: all the work described in the plans known as plans for residence for Mr. Harry E. Pitts."

The owner agreed therein "in consideration of the performance of this agreement by the contractor, to pay as hereinafter specified, at the times and to the party or parties and in the amounts and manner following, to wit:

"To the contractor:—A total of . . . $8,975.00 . . . in five (5) equal payments of . . . $1,795.00 . . . each, as follows:

"First—When sub-floor is complete

"Second—When roof is on

"Third—When ready for finish

"Fourth—When complete

"Fifth—When lien period has been accounted for.

Any and all extras ordered by the owner after signing this contract are to be paid for on or before completion."

■ The difficulty in this case arises from a letter type-written in Osmundsen's office on Highland stationery, dated May 24, 1948, reading as follows:

"Mr. Harry E. Pitts
Walnut Creek
California

"Dear Mr. Pitts:

"In connection with the contract between yourself and Highland Construction Co. dated May 24, 1948, for the purpose of constructing a residence to be located in the Saranap Area, Contra Costa County, according to the plans drawn and titled 'Residence for Mr. Harry E. Pitts'—

"The following is the understanding. The owner, Mr. Harry E. Pitts, will furnish all the carpentry labor and other labor and all the brick and brick-work necessary to complete the plan. The contractor, Highland Construction Co. will furnish all other work and materials and arrange for all sub-contracting work to be completed in good order.

"For this, the contractor will charge the owner the cost of this work plus the usual contractor's profit of ten percent and one and one-half percent for overhead cost. Any difference between the total of these amounts and the contract price will be paid to the owner.

"This agreement is in conjunction with and considered a part of said contract dated May 24, 1948

Highland Construction Co.
O. A. Osmundsen

"Acknowledge—Harry E. Pitts"

During the negotiations there was lodged with the bank a copy of the formal contract. Pitts testified that during the negotiations he told one of the bank's officers in at least two conversations that he was "going to furnish the labor and some of the materials on the house" but when asked at the trial whether he had said "that money [meaning for his services] was not to be paid out of the loan" he answered in the negative. The court found: "It is true that on the same day, May 24 . . . Osmundsen . . . without the knowledge of the bank . . . or of the United States Government, delivered a letter to plaintiff . . . setting out an 'understanding' that by its terms was made a part of the builder's contract dated the same day . . ."

The $4,304.21 note and deed of trust were obtained as

follows: the dwelling was completed and occupied about Thanksgiving Day, 1948, and by February 7, 1949, appellants had computed the total cost of labor, materials, overhead and profit at $13,127.69. Deducting the $8,823.48 received by them from the owner through the bank loan, a difference remained of $4,304.21. On February 7, 1949, Osmundsen sent an associate to the home of respondents and had them execute the note and deed of trust. On March 22, 1949, the latter instrument was recorded and became a lien on respondents' property junior to the bank's deed of trust.

The respondents' unquestioned obligation to the bank was $8,975 and on this second note the obligation now in question of $4,304.21, brought the total cost of the building up to $13,279.21.

Section 694a of the Servicemen's Readjustment Act (38 U.S.C.A. § 694 et seq.) prescribes as one of the conditions of the government guaranty: "(3) That the price paid or to be paid by the veteran for such property or for the cost of construction . . . does not exceed the reasonable value thereof as determined by proper appraisal made by an appraiser designated by the Administrator." Under such appraisal, as already appears, the maximum allowable cost was fixed at $11,475, hence the two obligations exceeded that "ceiling" by $1,804.21.

There is no question that the letter of May 24 was not shown to the bank. It follows that the bank made the loan in reliance on the face of the formal contract and that the Veterans' Administration made its guaranty of $4,000 to the bank on the same showing. The letter was incompatible with the formal contract since the former called for a "cost-plus" job while the latter bound the contractor to build the house for $8,975 and no more.

Appellants argue that the parties anticipated that the total cost would be under $8,975, and certainly well under $11,475. However, it turned out otherwise (See *Elmers* v. *Shapiro,* 91 Cal.App.2d 741, 752 [205 P.2d 1052]).

In our opinion this case is controlled by *Young* v. *Hampton,* 36 Cal.2d 799 [228 P.2d 1, 19 A.L.R.2d 830]. In that case, as in this, there was a firm, lump-sum contract with a side letter exchanged between owner and contractor calling for a "cost-plus" job which was wholly at variance with the contract upon which the bank made the loan and the V. A. made the guaranty. In the instant case such a letter was a contributing cause to the total cost of construction materially ex-

ceeding the maximum under the act, hence that case and the authorities which it cites are in point. In that case the court reversed the judgment in favor of Young based on the cost-plus contract with the direction that she be denied any relief on such contract.

There is a further reason for holding that the letter violated the policy of the law. Subsection 1 of section 694a of the act provides "That the proceeds of such loan will be used for payment of the property purchased or constructed or improved." The bank lent $8,975 on the strength of the "builder's contract" which provided that all thereof should be paid to the contractor in five equal progress installments. The letter, however, provided that the contractor would "charge the owner the cost of this work plus the usual contractor's profit of ten percent and one and one-half percent for overhead costs," and added that "*Any difference between the total of these amounts and the contract price will be paid to the owner.*" The intent thereof was that part of the money lent would not be applied as the law required but would go into the owner's pocket in case the cost-plus arrangement added up to less than $8,975.

This brings us to appellants' contention that in any event the court erred in decreeing the cancellation of the note and deed of trust in their entirety.

The letter provided that the owner, Pitts, would "furnish all the carpentry labor and other labor and all the brick and brick-work necessary to complete the plan." Pitts was then Highland's foreman carpenter. He testified that he put in practically all the time during his off hours, that is, evenings, Saturdays and Sundays, on the building, his labor during those times being without charge to his employer. However it appears that this did not turn out to be a satisfactory or practicable arrangement. It was to be expected that such an arrangement would be unworkable as it would retard other construction work, and this is apparently what happened. Pitts testified that shortly after construction started he was ordered by Osmundsen to concentrate on this job on a regular compensation basis so that he, the contractor, could draw down his progress payments from the bank, which testimony was uncontradicted.

The figure $4,304.21 was the result of a compilation by appellants of all the costs of construction (including profit and overhead) entitled "Cost Analysis Breakdown" which is in evidence. This exhibit contains 28 items in two columns.

The first column, headed ''Estimated Cost'' which apparently means items concededly chargeable to the performance of the contract proper, totals $7,930.70; the second, headed ''Extras'' totals $3,328.04, making $11,258.74. To this were added the items of ''Overhead 6% $675.52'' and ''Profit 10% $1193.43'', a grand total of $13,127.69 from which there is deducted $8,823.48 received by appellants from the owner through the bank loan, leaving a difference of $4,304.21.

The ''Extras'' column includes the item ''Labor-Carpentry, etc. $1911.43'' which is made up of the labor of eight men aggregating 771 hours at $2.48 per hour. Of these 771 hours, 576 were Pitts' labor, which at $2.48 comes to $1,428.48. From this it is clear that no ''Labor-Carpentry'' was treated as part of appellants' contract obligation. Indeed the ''breakdown'' exhibit itself removes any doubt on this score since it says ''Items listed under extras are those which were to be taken care of by the owner, instead, payment was requested from the contractor.'' Osmundsen testified to the same effect. The charging of this ''Labor-Carpentry'' as an extra cannot be justified without recognizing the legality of the letter.

The ''Extras'' column also includes the charges of ''Overhead 6% $675.52'' and ''Profit 10% $1193.43.'' How ''profit'' can be charged as an ''extra'' is difficult to follow, but it, too, obviously is based on the letter. Even under the letter the charge ''Overhead 6% $675.52'' cannot be defended or justified on any ground since the letter fixes overhead at only 1½ per cent. We are satisfied that none of the items $1911.43, $675.52 and $1193.43 is chargeable as an extra.

The formal contract, the terms of which were fully disclosed to the bank, provides that ''Any and all extras ordered by the owner after signing this contract are to be paid for on or before completion.'' It appears that there were extras other than those covered by the items of $1,911.43, $675.52 and $1,193.43 just discussed. Appellants point out that the cancellation of the note in its entirety results in unjust enrichment since legitimate extras would, in such case, be supplied by appellants without any payment therefor. They invoke the rule that he who seeks equity must do equity and cite 10 California Jurisprudence, page 510; *Dool* v. *First Nat. Bank,* 207 Cal. 347 [278 P. 233]; *Shimpones* v. *Stickney,* 219 Cal. 637 [28 P.2d 673], and *Touli* v. *Santa Cruz County*

*Title Co.,* 20 Cal.App.2d 495 [67 P.2d 404]. This presents the question whether the illegality which taints the letter so taints the transaction *as a whole* that no part of the obligation evidenced by the $4,304.21 note can survive.

The provision binding the owner to pay for extras is found in the formal contract, not in the letter, and was independent of the collateral "cost-plus" understanding. (See *Joy Mfg. Co.* v. *Julian Petroleum Corp.,* 208 Cal. 168, 171 [280 P. 952].) In our opinion it was severable from the illegal part of the transaction.

In the early case of *Jackson* v. *Shawl,* 29 Cal. 267, 272, the court quoted 2 Kent's Commentaries, 467, as follows: ". . . The general and more liberal principle now is, that when any matter, void even by statute, be mixed up with good matter, which is entirely independent of it, the good part shall stand and the rest be held void." That case has been followed in *McVicker* v. *McKenzie,* 136 Cal. 656, 660 [69 P. 495]; *Haines* v. *Commercial Mtg. Co.,* 200 Cal. 609, 623 [254 P. 956, 255 P. 805, 53 A.L.R. 725]; *Webster Mfg. Co.* v. *Byrnes,* 207 Cal. 630, 640 [280 P. 101]; *Innes* v. *Goldwater,* 30 Cal.App. 101, 104, 105 [157 P. 18]; *Rossiter* v. *Thompson,* 66 Cal.App. 491, 496, 497 [226 P. 806]. See, also, *Treadwell* v. *Davis,* 34 Cal. 601, 605-606; *Granger* v. *Original Empire Mill. & Min. Co.,* 59 Cal. 678, 682; *Mack* v. *Jastro,* 126 Cal. 130, 134 [58 P. 372]; *Hedges* v. *Frink,* 174 Cal. 552, 554-555 [163 P. 884]; *Simmons* v. *California Institute of Technology,* 34 Cal.2d 264, 275 [209 P.2d 581]; Civ. Code, § 1599; 6 Cal.Jur., p. 149, pp. 322-323.

In our opinion that rule should be applied in this case. While the suit was brought to cancel the $4,304.21 note and deed of trust in toto, we believe that instead of such total cancellation, equity will be fully satisfied by an adjustment which will reduce the obligation of the promissory note from $4,304.21 to such amount as will allow to appellants the reasonable or agreed value of "all extras ordered by the owner after signing" the formal contract, which are extras *in the true sense* and not merely items classified as extras (as in the "breakdown" exhibit) for accounting purposes. On the present record the validity of such claimed extras and the reasonable or agreed value thereof cannot be determined. Further evidence should be taken for the purpose of making such determination. When the court shall have found the total value of such properly allowable extras, if any, the findings should be amended accordingly and the conclusions of

law and judgment amended so as to provide for the reduction and partial cancellation of the obligation of the $4,304.21 promissory note as to all amounts in excess of the sum so found and determined. (See *Webster Mfg. Co.* v. *Byrnes,* 207 Cal. 630, 640, *supra.*)

There is this further limitation: the obligation of the respondents' promissory note as finally computed cannot exceed a sum which, when added to the $8,975 bank loan, will not exceed the Veterans' Administration maximum cost of $11,475.

The judgment is reversed with directions to the trial court to proceed in accordance with this opinion, without costs on appeal to either party.

Nourse, P. J., and Dooling, J., concurred.