THE VALLEJO BUS COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

HARRY V. SOANES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

FRANK O. BELL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

LUTHER E. GIBSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 11046, 11043, 11044, 11045. Promulgated January 23, 1948.

*Clarence E. Musto, Esq.*, for the petitioners.
*Thos. M. Mather, Esq.*, for the respondent.

### OPINION.

JOHNSON, *Judge*: The Commissioner determined against the Vallejo Bus Co. (hereinafter called petitioner corporation) a deficiency of $3,074.94 in declared value excess profits tax and a deficiency of $27,721.76 in excess profits tax for the year 1942, and asserted against the individual petitioners, Harry V. Soanes, Frank O. Bell, and Luther E. Gibson, as transferees of petitioner corporation's assets, liability for these deficiencies. The individual petitioners concede liability for any deficiency due, but contend that the Commissioner erroneously included in the corporation's 1942 income the profits of their partnership for the period June 1, to September 15, 1942. The proceedings were consolidated for hearing and decision and were submitted upon a stipulation and exhibits, which we adopt as findings of fact and from which it appears that:

The Vallejo Bus Co., a California corporation with principal office at Vallejo, California, filed its income and profits tax returns for 1942 with the collector of internal revenue for the first district of California. It engaged in the operation of bus lines in the vicinity of Vallejo, and reported income from such operations for the period January 1 to May 31, 1942. The individual petitioners, all residents of Vallejo and shareholders of the corporation, formed a partnership

which acquired the bus lines, and filed a partnership return for 1942 with the same collector, reporting income from bus operation for the period June 1 to December 31, 1942. Under the view that the partnership's acquisition did not become effective until September 15, 1942, the Commissioner shifted the income from the business for the period June 1 to September 15 from the partnership to the corporation, and this shift the petitioners assail.

As a public utility, the petitioner corporation was subject to the Railroad Commission of the State of California. Of its capital stock, petitioner Soanes owned 50 per cent, and Gibson and Bell, 25 per cent each. Having decided to operate the business as a partnership, the three made an oral agreement on May 19, 1942, to acquire and operate the lines under the firm name of Vallejo Bus Co., each having an interest in the partnership proportionate to his shareholdings in the corporation. The oral partnership agreement was reduced to writing and signed by the parties on November 12, 1942. The partnership, on May 19, 1942, made offer to petitioner corporation to purchase its operative rights and all of its assets except four Reo buses, for the sum of $29,937.20 cash, which offer petitioner corporation on that day accepted, and in the minutes of petitioner corporation concerning the transaction it is recited that the offer of sale and acceptance was "to become effective on the first day of June, 1942, subject to the approval of said transfer by the Railroad Commission of the State of California." The contract of sale between petitioner corporation and the partnership was reduced to writing and signed by the parties on June 9, 1942, and in it was contained the following:

IT IS UNDERSTOOD AND AGREED that the sale of said personal property herein above described shall be effective as of June 1, 1942, but that same is subject to the approval of the Railroad Commission of the State of California and in the event said approval is not forthcoming, this agreement will be null and void and of no effect, and the parties hereto shall be and remain in the same relationship and in the same situation that they are in prior to the execution of this agreement, and shall occupy the identical positions and relationships that they would have occupied had this agreement not existed.

Upon receiving the approval of the Railroad Commission of the State of California to said sale, the parties hereto and each of them agree to execute and deliver any and all instruments and documents necessary or convenient to carry into being the full intent and purpose of this agreement, * * *

On June 9, 1942, petitioner corporation, as seller, and the individual partners, as buyers, filed a petition with the Railroad Commission of the State of California, requesting the commission to approve the sale and transfer of its assets and operative rights to the partnership, and on September 15, 1942, the commission issued its order granting and approving same, and requiring the partnership to file within sixty days an appropriate time schedule and a withdrawal and adoption notice of tariffs as required by the commission's regulations and to file within

thirty days a copy of the partnership agreement. Petitioner corporation was dissolved on December 31, 1942.

The partnership opened a bank account on June 1, 1942, in the name of Vallejo Bus Co., a partnership, and all receipts and revenues from the operation of the business on and after that date were deposited in that bank account.

Effective on or before June 11, 1942, the beneficiaries in all policies of insurance were changed from petitioner corporation to "Luther E. Gibson, Harry V. Soanes and Frank O. Bell, doing business as Vallejo Bus Co." The record legal title of automobiles owned by petitioner corporation was not changed to the partnership until 1943.

Were the profits derived from the operation of the bus lines from June 1 to September 15, 1942, taxable to petitioner corporation? The answer depends upon *when* the sale and transfer from the corporation to the partnership was consummated. Petitioner says this was June 1; respondent contends it was September 15. Under the law of the State of California,[1] no public utility (such as the bus lines here) could be sold "without first having secured from the Railroad Commission an order authorizing" it. And the act further provides that any "such sale made other than in accordance with the order of the Commission authorizing same shall be void." The order of the commission authorizing the sale was not obtained until September 15, 1942, and transactions prior thereto would appear to be executory and lacking in finality.

The petitioner corporation, however, in its brief, asserts that the date on which the railroad commission promulgated its approval of the sale and transfer is not material in determining the effective date thereof, and cites *Hanlon* v. *Eshleman*, 169 Cal. 200; 146 Pac. 656 (1915), and *Otter Tail Power Co.* v. *Clark*, 59 N. D. 320; 229 N. W. 915 (1930). These cases do not sustain petitioner's contention. *Hanlon* v. *Eshleman* was a mandamus proceeding brought to compel the Railroad Commission of California to pass upon the proposed sale of a public utility which the owner had contracted to sell to complainant but refused to carry out the sale; the owner had not applied to the commission for authority to make the sale; the city of Los Angeles was also seeking to acquire part of the land comprising the waterworks, the utility involved. The Supreme Court of California held that it was not the function of the commission to determine the validity of a contract of sale, when contested, nor rights of parties thereunder, nor to compel the owner to sell, these being questions for the courts, not the commission.

*Otter Tail Power Co.* v. *Clark*, *supra*, was a North Dakota case where the state law concerning the sale of a public utility is similar to

---

[1] General Laws of the State of California—Public Utilities Act, sec. 51.

that of California. The litigants were the buyer and seller of a public utility, the facts of the litigation were lengthy and involved, but, briefly, the buyer had paid the seller full purchase price, taken possession of, and operated the utility, and about two years later it was first discovered that permission for the sale was not obtained from the railroad commission as the law required, and the seller in bad faith and in the fraud of the buyer's right sought to take advantage of this omission, and the court held that under the facts he was estopped from questioning the buyer's title to the property and enjoined him from interfering therewith. The case involved fraud, estoppel, and other issues wholly foreign to the pending case and its rationale fails to support petitioner's contention.

In conflict with petitioner's contention is the doctrine announced in a later California case, *Slater* v. *Shell Oil Co.* (1940) 39 C. A. 2; 103 Pac. (2d) 1043, from which we quote (at p. 1050) :

It is to be noted that this provision [sec. 51 (a) ] declares every transfer without consent of the Railroad Commission is void. That the section means what it plainly states, that a purported transfer in violation of the statute confers no rights on the transferee, and that third persons may raise this defense, is clearly established by. the following cases: *Webster Mfg. Co.* v. *Byrnes*, 207 Cal. 630, 280 Cal. 101; *Crum* v. *Mt. Shasta Power Corp.*, 220 Cal. 295, 30 P. 2d 30; *Napa Valley E. Co.* v. *Calistoga E. Co.*, 38 Cal. App. 477, 176 P. 699.

We do not agree with petitioner that the recital contained in the engineer's report to the railroad commission in 1943, that the bus lines had been operated as a partnership since June 1, 1942, is of any probative value here in determining the effective date of the sale. This was merely an opinion not binding here. Furthermore, the only question then involved before the commission was the determination of rates to be charged by the partnership, which was then unquestionably the operating owner.

Not only the law of California prevented the consummation of the sale until it was authorized by the commission, but likewise the contract of sale and the resolution of the corporation authorizing same both expressly stipulated that it was made "subject to the approval of the Railroad Commission"; the contract of sale further stated that "in the event said approval is not forthcoming this agreement will be null and void and of no effect." Accordingly, the sale could not be completed either under the law of California or the contract of the parties until approval by the Railroad Commission was had, and profit earned prior thereto in the bus lines operation belonged to petitioner corporation and is taxable to it. See *Lucas* v. *North Texas Lumber Co.* (1930), 281 U. S. 11; *Michigan Steel Corporation of New Jersey* (1938), 38 B. T. A. 435; *Albert E. Dyke* (1946), 6 T. C. 1134; *Portland Furniture Mfg. Co.*, 30 B. T. A. 878.

Petitioner's final contention is that the income for the period in dis-

pute can not be taxed to petitioner corporation because such income was paid to and received by the partnership under a claim of right without restriction as to its disposition, and cites *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417, and *Commissioner* v. *Wilcox*, 327 U. S. 404.

This is a novel and, we believe, an unwarranted application of the well established claim of right theory. The cases cited and all others invoking the rule, so far as we are aware, as respondent points out, are those where the litigant taxpayer *receives* income without restriction pending settlement of a dispute as to ownership, or where a taxpayer *receives* illegal income as to which no dispute has been raised, but the taxpayer contends that lack of clear title prevents imposition of taxes thereon by the government.

Such is not the case here, for under the facts we hold that the possession by the partnership, if any, of the bus line, its properties, or its profits during the period in question was held by the partnership as agent of petitioner corporation, which remained the lawful owner of same until September 15, 1942.

The Commissioner did not err, and accordingly,

*Decisions will be entered for respondent.*