[Civ. No. 2012.   Second Appellate District.—December 12, 1916.]

W. H. WOLF, Respondent, v. MRS. B. BRAKEBILL et al., Defendants; CHAS. THOMPSON et al., Appellants.

CHAS. THOMPSON et al., Appellants, v. W. H. WOLF et al., Respondents; MRS. B. BRAKEBILL et al., Defendants.

ACTION ON PROMISSORY NOTES—PURCHASE PRICE OF CIGAR BUSINESS—MISREPRESENTATION AS TO STOCK—CANCELLATION OF NOTES—ACCOMMODATION MAKERS.—Accommodation makers upon promissory notes given in payment of the purchase price of the stock in trade, business, and goodwill of a wholesale cigar-house are not entitled to have the notes canceled upon the ground that their signatures thereto were procured by fraudulent representations made by the vendors to the vendees as to the condition and quantity of the stock, where such vendees had been in charge and management of the business for nearly a year, and were fully acquainted with both the quantity of the stock on hand and the condition thereof.

ID.—RESCISSION AND RESTORATION—ESSENTIALS TO CANCELLATION.—
A rescission of the contract of sale and return of the property is
a prerequisite condition of maintaining an action to cancel the
notes.

APPEAL from a judgment of the Superior Court of Los
Angeles County, and from an order denying a new trial.
E. P. Unangst, Judge presiding.

The facts are stated in the opinion of the court.

Manning, Thompson & Hoover, for Appellants.

Denis & Loewenthal, for Respondents.

SHAW, J.—The first of these actions was brought by plain-
tiff to recover a balance upon two promissory notes made to
him by defendants. In the second action, plaintiffs Chas.
Thompson and C. B. Williams (made defendants in the first)
sought a decree to have the notes constituting the subject of
the first action canceled and annulled. In both actions de-
fendants B. Brakebill and Mrs. B. Brakebill suffered default.
The grounds of defense pleaded by Thompson and Williams
to the recovery sought upon the notes are substantially the
same as those set forth in their complaint to have the notes
canceled and annulled. By stipulation of the parties the two
actions were consolidated for trial, as a result of which trial
it was adjudged and decreed that plaintiff in the first action
have judgment for amount of the notes sued upon, and that
Thompson and Williams, plaintiffs in the second action, take
nothing thereby.

From the judgment so entered, and an order of court
denying their motion for a new trial, Thompson and Williams
appeal.

The complaint upon the notes was in the usual form, set-
ting forth copies thereof, signed "Mrs. B. Brakebill, B. Brake-
bill, Chas. Thompson, C. B. Williams," as makers thereof.
As a defense to recovery thereon, and also as grounds for the
decree asked canceling and annulling the same, Thompson
and Williams alleged that their signatures to the notes, as
accommodation makers and sureties, were procured by fraud
and misrepresentation of Wolf, Castle Bros., Wolf & Son.

It appears that W. H. Wolf was president of Castle Bros.,
Wolf & Son, a corporation which owned a wholesale cigar-

house in Los Angeles, of which business B. Brakebill had for about a year prior to August, 1911, been in charge as manager thereof, and as such was under bond in the sum of one thousand dollars for a faithful discharge of his duties. About August 8, 1911, Mr. Wolf came to Los Angeles from San Francisco, where the main business of the corporation was conducted, and found among the outstanding accounts for goods sold by Brakebill one appearing against a Mr. Inman for $1,394.18, which the latter claimed he had paid, and exhibited what purported to be receipted bills showing payment of some six hundred dollars on said account. Wolf told Brakebill the result of his interview with Inman, and expressed a desire for immediate settlement. Thereupon Brakebill proposed to buy the stock of goods and business, stating that he could secure parties to join him in giving a note for the purchase price. Upon Wolf indicating his willingness to effect a sale upon such conditions, negotiations followed, as a result of which the fixtures, stock in trade, business, and goodwill of the House of Manila were sold and by bill of sale transferred to Mrs. B. Brakebill for the sum of $5,485.74, which was the value of the goods agreed upon between the vendor and purchaser. At the same time Wolf sold and assigned to Mrs. B. Brakebill the Inman account of an agreed price of $1,394.18. In consideration of such transfer the promissory notes constituting the subject of this action were delivered to Wolf, who received them in full payment of the purchase price of the property sold to Mrs. B. Brakebill.

The alleged fraud constituting the defense, and upon which appellant prayed for a cancellation and annulment of the notes was, first, that the stock was represented to be good and salable, whereas it was musty, mildewed, worm-eaten, and worthless; second, that one-half the goods represented to be in stock, as per an inventory prepared, were not actually in stock; third, that the alleged account represented to exist against Inman, and for which the note of $1,394.18 was given, did not exist; fourth, that Wolf, Castle Bros., Wolf & Son agreed to supply stock to Mrs. Brakebill for future sale upon the guaranty of Thompson and Williams, with which agreement they thereafter refused to comply; and, fifth, that Wolf, Castle Bros., Wolf & Son fraudulently conspired with the Brakebills to secure the signatures of Thompson and Williams to said notes as accommodation makers thereof. As to all

of these contentions the court found in favor of Wolf. In our opinion, the testimony, as to which there is some conflict, taken in connection with the circumstances surrounding the transaction, is ample to support the findings made. That a part of the stock was mildewed and worm-eaten is conceded. This fact, however, was well known to the purchaser. On this account, in some instances, reductions were conceded to the extent of sixty per cent of the invoice price. It must be borne in mind that Wolf was not selling the goods nor the account to Thompson and Williams, but selling them to one who, with her husband, as shown by the evidence, had been in charge and management thereof for nearly a year, and hence fully acquainted with both the quantity of stock on hand and the condition thereof. What is said with reference to this proposition is likewise applicable to the second, namely, that one-half of the goods as shown by the invoice were not in stock. This claim is based upon the evidence of one Dignum, who testified that six days prior to the sale he made an inventory of the stock in the House of Manila from data given him by B. Brakebill, which on that date showed a less number of cigars on hand than on the date of the sale. This is not inconsistent with the alleged statement of Wolf that the inventory constituted a true and correct list of the goods on hand; nor with that of Mrs. Brakebill, the buyer, who, in response to Thompson's inquiry in reference to the inventory, said: "I know that is correct."

That Inman had paid something on his account, which payment was not shown by the books may be conceded. The purpose of buying the account, as stated to Thompson and Williams by the Brakebills, was to give them money with which to conduct the business until collections from their own sales should come in, and whether part of it had been paid and then in possession of the Brakebills, or whether paid thereafter, was immaterial. In either event, as stated by Brakebill to Thompson, since the contrary is not shown, "it was as good as wheat." The purpose of Thompson and Williams in signing the note was to obtain for Mrs. Brakebill the use of this money, which purpose, so far as disclosed by the record, was accomplished. There is no evidence that Mrs. Brakebill, the buyer, did not receive the full benefit of the amount represented to be due from Inman, and it is clear that the House of Manila released to her all claim thereto.

Moreover, the evidence as a whole touching the subject shows that Thompson and Williams were both attorneys at law; that the former was the legal adviser of the Brakebills; that no confidential relation existed between Wolf and any of the parties, his dealings with the Brakebills being at arm's-length; that Thompson and Williams had every opportunity to examine the stock before signing the notes; that before signing they consulted Mrs. Brakebill and her husband, the former stating that there was sixty to seventy per cent profit to be derived from the business, as to which there is no evidence to the contrary, nor anything to show that Mrs. Brakebill, who retains the property and the proceeds of the sales thereof, is insolvent or unable to meet the payment of the notes for which as to her the other makers are sureties. As to Wolf, however, they were joint makers of the notes, having signed them for the accommodation of Mrs Brakebill, in consideration of which Wolf conveyed to her the property referred to. So far as shown, Mrs. Brakebill obtained just what she contracted for; hence she was not defrauded and makes no complaint. While she retains the property and the benefits of the transaction, Thompson and Williams asked to have the notes given for the purchase price thereof canceled and to be released from their obligation, because the party for whose accommodation they signed the notes made an injudicious purchase. To our minds, a statement of the case is a sufficient answer to the contention of appellants. (See *Stockton etc. Society* v. *Giddings,* 96 Cal. 84, [31 Am. St. Rep. 181, 21 L. R. A. 406, 30 Pac. 1016].)

We find no evidence whatever to support the contention as to the alleged conspiracy existing between Wolf and the Brakebills to secure the signatures of Thompson and Williams to the notes by means of fraud. In the absence of such conspiracy, a rescission of the contract and return of the property is a prerequisite condition of maintaining the action to cancel the notes. (*Gifford* v. *Carvill,* 29 Cal. 589; *Upper San Joaquin Canal Co.* v. *Roach,* 78 Cal. 552, [21 Pac. 304].)

It is next claimed that the court abused its discretion in refusing to allow Thompson and Williams to amend their answer after the trial by alleging that Wolf consented to and did deal with the said defendants Thompson and Williams as sureties and not as principals. The language of the notes imports an unconditional promise to pay on the part of the

makers thereof, and conceding, as ˙claimed, that notwithstanding the fact that where one appears as the maker of a note he may show that the payee consented to and did deal with him in the capacity of surety, the evidence in support thereof must be clear and unequivocal. (*Oppenheimer* v. *Clunie*, 142 Cal. 313, [75 Pac. 899] ; *Colton* v. *Stanford*, 82 Cal. 351, 398, [23 Pac. 16].)   In the case at bar, while it appears that Brakebill stated to Wolf that he could obtain parties to ''join him'' in giving notes for the purchase price of the property, and that Wolf in the negotiations used the words ''security'' and ''surety,'' there is no evidence that tends to show any agreement or understanding on his part, nor in fact upon the part of Thompson and Williams, that the capacity in which they signed the notes and that in which their signatures were accepted was other than that of joint makers thereof, in the promise to pay unconditionally. (*Damon* v. *Pardow*, 34 Cal. 278.)   There was no abuse of discretion exercised in denying the motion.

We have examined a number of alleged errors predicated upon the rulings of the court in the admission and rejection of evidence, nearly all of which, under the view of the case hereinbefore expressed, were upon immaterial matters,˙ and where material they are not of a character which could be deemed prejudicial to the substantial rights of appellants.

The judgment and order are affirmed.

Conrey, P. J., and James, J., concurred.