[Civ. No. 24502. Second Dist., Div. Three. Mar. 9, 1961.]

THOMAS M. FLEMING et al., Respondents, v. MYLES KAGAN et al., Defendants; I. E. BENVENISTE, Appellant.

Hampton Hutton and George C. Mitchel for Appellant.

Louis Romero for Respondents.

VALLÉE, J.—Plaintiffs brought this suit against I. E. Benveniste, United States Wrecking Corporation, Myles Kagan, and Hyman Galea for a decree cancelling (1) a promis-

sory note and a deed of trust securing the note, (2) a purported contract of sale of an unfinished building, and for compensatory and punitive damages. United States Wrecking Corporation, Myles Kagan, and Hyman Galea did not appear at the trial. I. E. Benveniste appeared with counsel. Judgment was for plaintiffs as prayed except that no damages were awarded against Benveniste. Benveniste appeals.

Plaintiffs owned a parcel of realty improved with a small house in Compton, subject to a deed of trust in the sum of $2,287.45 which they were paying in installments of $30 a month. Some time prior to April 25, 1954, United States Wrecking Company, called the corporation, and certain of its officers and employees entered into a conspiracy to defraud plaintiffs of their properties. In furtherance of the conspiracy, on April 25, 1954, Garvin Foss, an agent of the corporation, showed plaintiffs a house to be moved from a freeway route. He falsely represented to plaintiffs that the corporation would sell plaintiffs a ''package deal'' in which the corporation would move the house and relocate it on their lot, furnish all labor and materials for gas, electricity and plumbing facilities, repair and alter the house and site to meet governmental requirements, carry out numerous other specified details, and make the house habitable in all respects and ready for occupancy within three months; that the price would be $4,500 and would include paying the existing encumbrance, all costs and interest and be amortized over a period of 10 years payable in installments of $50 a month; that the first installment would be due one month after the building had passed inspection by governmental authorities; that plaintiffs' real property would not be encumbered in any manner or stand as security for the debt; and that plaintiffs would also receive $700 if plaintiffs put in the foundation and helped with the other work.

Plaintiffs believed the representations, and in reliance on them, orally agreed to the proposal. Foss then obtained plaintiffs' signatures on some papers which he told them were requests for permits required in connection with the sale, moving and repairs of the house, and a document purporting to reduce the oral agreement to writing. Three or four days later Myles Kagan and Hyman Galea, president and sales manager of the corporation, procured plaintiffs' signatures on other papers which they represented to be more requests for permits. Two of the papers signed by plaintiffs were, in fact: (1) a promissory note for $7,500 to the order of the corporation, dated April 24, 1954, bearing interest of 6 per cent, and pay-

able in four monthly installments of $50 each commencing August 3, 1954, and each month thereafter until December 3, 1954, at which time the balance of principal and interest became due; (2) a deed of trust on their realty as security for the note. Plaintiffs had no knowledge they had signed a note or a deed of trust.

The house was moved to plaintiffs' lot on August 12, 1954, and left in a state of disrepair. Plaintiffs put in a foundation and received $300 from the corporation. Despite demands by plaintiffs on the corporation, nothing more was done by it. At the time of trial, beginning November 20, 1958, the house remained unfit for habitation. It was a detriment and of no value to plaintiffs. After an installment payment was made by plaintiffs on July 16, 1954, on the existing loan, they ceased making payments because the balance of $2,287.45 had been paid by the corporation. About August 16, 1954 the lender informed Mr. Fleming, " 'Mr. Fleming, you can't make no more payments, because there is a bond put up for your payments.' "

Pursuant to the conspiracy, the note for $7,500 and the deed of trust securing it were thereafter offered for sale. On September 20, 1954, Benveniste purchased them at a discount. No installment payments had been made by plaintiffs at that time; two payments were due and unpaid. Benveniste was aware that the payments had not been made. On July 13, 1955, notice of default and election to sell under the deed of trust was filed with the county recorder. Plaintiffs learned of the fraudulent note and deed of trust in August, 1955. They attempted to give notice of rescission of the documents and of the oral agreement, but their efforts to contact the corporation and its agents were unavailing. The trustee's sale was noticed for November 15, 1955. Plaintiffs brought this suit praying for an injunction against the impending sale and for the other relief stated above.

The court found fraud in the procuring of the note and deed of trust; that plaintiffs were not negligent; and that Benveniste purchased them after maturity, not in good faith, and became the holder by assignment and not by negotiation.

Benveniste contends plaintiffs have been unjustly enriched at his expense. He makes no claim of error in the findings of fraud perpetrated by the corporation and its agents nor of the finding that he is not a holder in due course of the note. He asks this court to reverse the judgment with directions to the court below to order plaintiffs to pay to him the $2,287.45

which was given to satisfy the original encumbrance on plaintiffs' property, or, in the alternative, to decree that the note and deed of trust be cancelled only to the extent they exceed that amount plus interest from the date the encumbrance was released. He seeks thus to reduce his loss on the theory that both he and plaintiffs were victims of the fraud of the corporation and its agents and that "equity should not favor one over the other."

We can find no basis in law or equity for granting the relief requested. Benveniste's rights are founded on a negotiable instrument. ■ One who is not a holder in due course or has not obtained title through such a holder, takes a negotiable instrument subject to all defenses which the maker may interpose against the assignee of a nonnegotiable instrument. (Civ. Code, § 3139.) ■ If the note is unenforceable, the lien of the deed of trust gives it no validity. It is a mere incident of the debt or obligation which it is given to secure. (*Coon* v. *Shry,* 209 Cal. 612, 615 [289 P. 815].)

"A written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled." (Civ. Code, § 3412.) ■ A note which the maker has been fraudulently induced to execute is voidable in the hands of all except one who takes it as a holder in due course for value before maturity without notice of any infirmity or defect. (*Bank of Balboa* v. *Benneson,* 122 Cal. App. 121, 122 [9 P.2d 540] ; *Bank of America* v. *Lamb Finance Co.,* 145 Cal.App.2d 702, 713 [303 P.2d 86].) ■ A note which the maker executes as a result of fraud and without any knowledge of the nature of the instrument, believing it to be something else, is wholly void. (*C.I.T. Corp.* v. *Panac,* 25 Cal.2d 547, 550 [154 P.2d 710, 160 A.L.R. 1285]. See *Gardner* v. *Rubin,* 149 Cal.App.2d 368, 372 [308 P.2d 892] [similar fact situation involving same defendant corporation and agents as in present case].)

■ In obtaining rescission or cancellation, the rule is that the complainant is required to do equity, as a condition to his obtaining relief, by restoring to the defendant everything of value which the plaintiff has received in the transaction. (*Loud* v. *Luse,* 214 Cal. 10, 12 [3 P.2d 542] ; *Wolf* v. *Brakebill,* 32 Cal.App. 300, 304 [162 P. 918].) ■ The rule applies although the plaintiff was induced to enter into the contract by the fraudulent representations of the defend-

ant. (*Henry* v. *Phillips*, 163 Cal. 135, 143, 146 [124 P. 837, Ann.Cas. 1914A 39]; *Clint* v. *Eureka Crude Oil Co.*, 3 Cal. App. 463, 465 [86 P. 817].) In the application of equitable principles, however, it would seem that the basic distinction between the cancellation of a *void* instrument and the rescission or cancellation of a *voidable* contract or instrument must be recognized, and the rule should have no application where the instrument is void. "There is a manifest distinction between fraud in the execution—in the fact of whether or not an instrument has been executed at all, and fraud in the inducement, that is, where because of the fraudulent representation of the payee, the maker knowingly and voluntarily executes the note, but it is voidable because of the fraud inducing him to execute it. In the former there is no contract whatever. In the latter there is a contract which is voidable for fraud." (*C.I.T. Corp.* v. *Panac*, 25 Cal.2d 547, 548 [154 P.2d 710, 160 A.L.R. 1285].)

■ As stated in 9 California Jurisprudence 2d section 49, page 639, of course, "[I]n an action to cancel an instrument, where the defendant shows expenditures or part performance *under an agreement underlying such instrument,* the defendant is entitled to reimbursement for such expenditures or for the reasonable value of the benefits conferred by part performance, deducting therefrom any damages actually suffered by reason of default." (Emphasis added.) But where the instrument is executed by the maker without knowledge or intent to enter into a contract in respect to the instrument, that is, where the contract is void there is no underlying contract under which the defendant can show expenditures or part performance. It has been held that where one claims a fraud was practiced on him by securing his signature to a writing which was in reality a deed of which he had no knowledge, and which he never agreed to make at all, he may cancel the deed without returning sums expended by defendant since they were not the fruit of the deed since no deed had been contracted. (*Burt* v. *Burt*, 145 Ga. 865 [90 S.E. 73, 74].)

The cases cited by Benveniste in support of his contention that plaintiffs are required to restore all benefits they received even though the note and deed of trust were void are cases in which there was an underlying contract between the parties. Two involve contracts declared "void" by statute; and the parties had actually manifested assent to contract. The third, contrary to Benveniste's contention, agrees with what we have stated. In *Sullivan* v. *California Realty Co.*, 142 Cal. 201 [75

P. 767], the parties manifested assent to a building contract. The plaintiff asked cancellation of the contract on the ground it was "void" by statute where it had not been recorded. The court held that the plaintiff could not claim the contract to be void as between the parties to it, as the statute was to protect lien rights. In *Pitts* v. *Highland Const. Co.*, 115 Cal.App.2d 206 [252 P.2d 14], which Benveniste cites in contending that the note should have been cancelled *pro tanto*, the parties manifested assent to a building contract which was illegal in part. The reviewing court held that the note should be cancelled only in part, since the part of the contract which was void for illegality was severable. In *Security First National Bank* v. *Earp*, 19 Cal.2d 774 [122 P.2d 900], the makers of a note and deed of trust manifested assent to the renewal of a note and mortgage in the amount of $3,000. They executed a note in that amount and a deed of trust containing a provision, not present in the previous mortgage, that it was given to secure additional obligations which were presently owed by them to the payee. The court refused to hold the deed of trust as security for an indebtedness other than the $3,000 represented by the note, in effect reforming the deed of trust by cancelling it *pro tanto*. The court said (p. 778): "Since defendants received nothing from plaintiff under the rescinded provision that they can restore, they are under no duty to make restitution." We think the same must be said in respect to the entire note and deed of trust in the present case.

Here there were two separate fraudulent transactions. There was fraud in the inducement through the false representations which induced plaintiffs to enter into the oral contract; there was fraud in the execution through the obtaining of plaintiffs' signatures on the note and deed of trust without their knowledge or consent. The argument that plaintiffs have been unjustly enriched at the expense of Benveniste erroneously assumes the satisfaction of the existing encumbrance on plaintiffs' real property was part of the consideration for and pursuant to a contract underlying the note and deed of trust, and thus a part performance, which should be restored to Benveniste as assignee of the instruments. A sufficient answer is supplied by the findings of the court. The court made an express finding that plaintiffs' "realty would not be encumbered in any manner or stand as security for the payment" of the price which plaintiffs agreed to pay. There was no evidence, and therefore no finding, that plaintiffs agreed to execute a note in any amount. The note and deed of trust represented

no contractual obligation and no performance was given in respect to them. Since plaintiffs received nothing under the cancelled instruments, they are under no duty to restore anything as a condition of their cancellation.

Benveniste argues that, because he purchased the void instruments, at least in equity he should have the right to any benefits which plaintiffs received pursuant to the oral contract if they are permitted to avoid it. Equity follows the law. An indorsement transfers title to the instrument and subjects the indorser to a contractual liability. The note was endorsed to Benveniste "without recourse." Such an indorsement is a "qualified indorsement." (Civ. Code, § 3119.) The indorser warrants that he has no knowledge of any fact that would render the instrument valueless, but he does not warrant that the obligor will pay. (*People* v. *Barry,* 153 Cal.App.2d 193, 211 [314 P.2d 531].) Even where the note is executed under terms of an agreement, one who takes by such an indorsement has no recourse against his indorser if the maker fails to pay. It follows that he should not have the greater right to a lien on benefits which may revert to the payee under the contract pursuant to which the note was executed. His action is on the warranty. He has no equity superior to the rights of general creditors of his transferor.

The further contention of Benveniste is that it was his money which satisfied the obligation of plaintiffs and for that reason he has the right to restitution. The equitable doctrine of subrogation has been extended to one who, having no previous interest, and being under no obligation, pays off the mortgage, or advances money for its payment, at the instance of a debtor party and for his benefit (*Grant* v. *de Otte,* 122 Cal.App.2d 724, 729 [265 P.2d 952]), or where he reasonably believes that the payment is necessary for the protection of his own interests. (*Employers Mutual Liab. Ins. Co.* v. *Pacific Indem. Co.,* 167 Cal.App.2d 369, 379 [334 P.2d 658]; *Estate of Kemmerrer,* 114 Cal.App.2d 810, 813 [251 P.2d 345, 35 A.L.R.2d 1393].) Benveniste cites *McIndoo* v. *Brown,* 125 Okla. 88 [256 P. 743], as a case involving similar facts and principles. There the parties entered a contract to exchange parcels of realty both of which were mortgaged. While the exchange was pending, the plaintiff executed a mortgage on the defendant's property and the lending institution satisfied the existing mortgage. The defendant repudiated the contract and the plaintiff sought specific performance, which he later

abandoned. In the action the defendant prayed for cancellation of the mortgage. The lender, as intervener, was granted restitution against the defendant for the amount paid out in releasing the original mortgage.

■ The facts in the present case present a different situation. The encumbrance was satisfied by the corporation between July 16, 1954, and August 16, 1954. Benveniste purchased the note on September 20, 1954, more than one month after the encumbrance had been satisfied. Benveniste did not pay the encumbrance; nor did he advance money for its payment. The corporation did not obtain and use Benveniste's money to satisfy the debt of plaintiffs. Moreover, Benveniste purchased the instruments with knowledge that the payments called for by the note had not been paid when due. Plaintiffs praying cancellation had no notice of any fraud and no duty to make inquiry. Contrary to the case cited, they do not seek to benefit by their own wrong. Furthermore, we are not convinced that they have been enriched. The evidence was that the house, including the $300 which was received and invested in materials for the foundation, is of no value to plaintiffs. At the time of trial, more than four years after the house was moved to their lot, they continued to suffer the nuisance of the unsightly structure standing on their property. We hold plaintiffs have no duty to make restitution to Benveniste.

■ Benveniste also contends it was error for the court to fail to make a finding on the issue of plaintiffs' duty to restore to him any benefits received. The findings that the instruments should be cancelled and limiting the awards of damages to plaintiffs are implied findings that plaintiffs have no duty to make restoration to Benveniste.

Affirmed.

Shinn, P. J., concurred.

Ford, J., did not participate herein.