Filed 5/8/14  Fenske v. Wells Fargo Bank CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

| | |
|---|---|
| ANNA MICELI FENSKE, | |
| Plaintiff and Appellant, | C068010 |
| v. | (Super. Ct. No. 75157) |
| WELLS FARGO BANK, N.A., et al., | |
| Defendants and Respondents. | |

Robert and Anna Fenske borrowed money from Wells Fargo Bank, N.A. to finance the purchase of a house.  After defaulting on the loan, Anna sued Wells Fargo Bank, N.A. and Wells Fargo Home Mortgage, Inc. (collectively Wells Fargo), asserting causes of action for cancellation of the loan documents, fraud, quiet title, declaratory relief, and injunctive relief.  Anna claims Wells Fargo gave the Fenskes a loan with terms different from those initially represented, and that Wells Fargo induced the Fenskes to

1

sign loan documents by falsely promising to change the terms of the loan after the close of escrow.

The trial court denied Anna's motion to amend her complaint, and granted Wells Fargo's motion for summary judgment.

Anna now contends the trial court erred in granting Wells Fargo's motion for summary judgment and abused its discretion in denying her motion to amend the complaint. She claims (1) she did not subsequently ratify the Wells Fargo loan by making payments on the loan and by affirming the loan in her bankruptcy petition; (2) she can prove Wells Fargo's fraudulent conduct caused the Fenskes to default on the loan; (3) it is appropriate for her to seek cancellation of the loan documents without returning the loan proceeds; and (4) she should have been permitted to amend her complaint to add Placer Title Company and escrow officer Michelle Szura as defendants.[1]

We conclude (1) the trial court did not err in ruling that Anna ratified the loan; (2) it does not matter whether Anna can raise a triable issue of fact with regard to causation because she subsequently ratified the loan; (3) because Anna's cause of action for cancellation of the loan documents is based on fraud in the inducement, she cannot cancel the loan documents without returning the loan proceeds to Wells Fargo; and (4) the trial court did not abuse its discretion in denying Anna's motion for leave to amend, because she knew about the title company and the escrow officer before she filed her original complaint.

We will affirm the judgment.

---

[1] Anna also argues that she has standing to sue. Wells Fargo does not challenge Anna's standing.

2

BACKGROUND

The background is taken from the evidence submitted in support of, and in opposition to, Wells Fargo's motion for summary judgment or summary adjudication, along with the reasonable inferences that may be drawn from that evidence, viewed in the light most favorable to Anna. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).)

The Fenskes applied to Wells Fargo for a residential loan to purchase a house in Grass Valley (the property). They worked with loan officer Jason Boyd to obtain the loan. Boyd told the Fenskes they would get one loan, which would be a "fixed, conventional 30-year" loan. Boyd also represented that after 12 months the Fenskes could refinance their loan.

The Fenskes signed a purchase contract for the property and opened escrow with a deposit of $500. Escrow was set to close on November 10, 2006. However, Placer Title Company advised the Fenskes that loan documents had not been received by the closing date. When the Fenskes visited the office of Placer Title Company on November 16, 2006, to sign documents, they were advised that the documents for the Wells Fargo loan had not arrived, but the documents for a second loan were ready and the Fenskes should sign those first. That was the first time Anna learned there would be two loans. The Fenskes refused to sign any documents until they spoke with Boyd to make sure they were getting the loan Boyd qualified them for. Anna called Boyd and left telephone messages for him, but received no response.

Placer Title Company asked the Fenskes to sign documents at its office on November 22, 2006. On that occasion, the Fenskes were again presented with documents relating to a second loan. Anna tried to contact Boyd several times but received no response. The escrow officer asked the Fenskes to sign the papers "to get started." She said "we could fix everything later with Wells Fargo when she got the first mortgage papers." The Fenskes signed the loan papers presented to them based on the escrow

3

officer's representation that nothing was final until the papers for the "first loan" were signed. But when Anna saw an application which overstated her income and contained incorrect information about debts, the Fenskes stopped signing documents and left the Placer Title Company office.

The Fenskes returned to the Placer Title Company office on November 27, 2006, when they received word that all of the loan documents had arrived. When Anna noticed that some of the documents were dated November 16, she demanded to speak to "someone in authority" at Wells Fargo. Anna learned on that date that Boyd was no longer with Wells Fargo. Anna spoke with a loan officer named Curtis King. The Fenskes complained to King that the loan documents contained terms different from those they were promised. Anna told King she and Robert did not want a second loan. But Anna understood from the conversation with King that she and Robert had no choice but to accept the second loan. King said the Fenskes had to sign the paperwork as presented and King would "see to it" that "it would all get changed later to meet the terms" the Fenskes had been promised. King said the Fenskes would sign a power of attorney that would allow Wells Fargo to change the loan to correct any typos or mistakes.

The Fenskes' lease had expired and they had no place to which they could move. Anna overheard the escrow officer's heated telephone conversation with the seller about why the Fenskes had not signed the escrow papers. The escrow officer told the Fenskes they would be in default if they did not proceed with the purchase. The Fenskes began signing documents because of King's statements to them and the pressure they felt.

The documents Anna signed were loose; none of the pages were stapled or clipped together. The escrow officer presented the Fenskes with only those pages that required their signature, did not explain the nature of any document to them, and did not allow them the time to read through the documents.

Robert knew at the time escrow closed that he and Anna got two loans. The buyer/borrower estimated settlement statement showed the purchase of the property was financed by a $500 deposit from the Fenskes, a loan of $358,400 from Wells Fargo, and a loan of $89,600 from an entity called DB Home Lending. Anna acknowledged she and Robert received two loans, one from Wells Fargo and the second from an entity called DB Home Lending. But she says she did not know the terms of the loans.

A few days after the Fenskes signed escrow papers, King contacted Anna to ask her to sign a new loan application for the second loan. Anna refused. When Anna asked about changing the terms of the loan, King told her not to worry, "it's being taken care of." But King did not contact Anna again and Anna never received amended loan documents from Wells Fargo.

The Fenskes obtained title to the property on November 30, 2006. On the same date, a deed of trust granting Wells Fargo Bank, N.A. a security interest in the property for a loan of $358,400, plus interest, was recorded in Nevada County. Anna claims the initials and signature for her on that deed of trust are forged.

Wells Fargo contends the Fenskes signed a promissory note in the principal sum of $358,400, obligating them to make monthly payments beginning on January 1, 2007. Anna contends she did not sign that promissory note.

According to Anna, King had promised that her concerns would be addressed, but she realized there was still a problem when she received the first loan statement from Wells Fargo. The statement referenced two loans, not the single loan that Boyd said the Fenskes would get. And the amount of the monthly payments on the first and second loans was a little over $1,000 more than the amount Boyd quoted. Anna realized Wells Fargo did not correct the terms of her loan as King had promised. She contacted Wells Fargo but received "no meaningful information."

Nevertheless, the Fenskes made the full monthly payments to Wells Fargo beginning in January 2007. The Fenskes lived at the property and planned to refinance

5

their loan later at a more favorable rate. The Fenskes made about 12 payments on the Wells Fargo loan. Wells Fargo Bank, N.A.'s interest in the note and deed of trust was transferred to Wells Fargo Home Mortgage, Inc. Anna admits that she made loan payments to Wells Fargo Home Mortgage, Inc.

Making the monthly payments was difficult for the Fenskes and they were sometimes unable to pay other expenses. The Fenskes unsuccessfully attempted to refinance their loan in 2007.

Anna was laid off from one of her jobs in December 2007 and the Fenskes separated in January 2008. Robert moved out of the property and stopped contributing to the monthly mortgage payments after January 2008. Anna could not continue full payments by herself.

Anna stopped making payments on the Wells Fargo loan in February 2008. She asked Wells Fargo for a loan modification. At that time, she still believed she had a "conventional" fixed rate loan. According to Anna, Wells Fargo said she could modify the loan and strung her along for months.

Anna received a notice of default from Wells Fargo in May 2008. In late August 2008, Glendora Hudson, a Wells Fargo consumer service representative, told Anna the Wells Fargo loan was not a 30-year fixed rate loan; rather, it was a loan with interest only payments for the first five years and higher payments beginning in 2012.[2] Anna was informed that the loan could not be modified.

On December 11, 2008, Anna filed a petition for bankruptcy. Robert filed a separate bankruptcy petition. Anna's petition listed Wells Fargo and Ocwen, a successor

---

[2] To the extent Anna contends the Wells Fargo loan is an adjustable rate loan, the promissory note Wells Fargo submitted in support of its motion shows the Fenskes received a 30-year, fixed rate loan. Anna fails to show the existence of a disputed material fact in this regard.

in interest to the second loan, as creditors. She said she intended to keep the property and reaffirm the debts owed to Wells Fargo and Ocwen. Anna disclosed a potential workers' compensation claim but did not disclose any other claims.

Anna was granted a discharge in bankruptcy on March 26, 2009. A final decree ordering the bankruptcy estate closed was filed on April 29, 2009. Less than three months later, Anna initiated this lawsuit against Wells Fargo.

About two and a half months before the trial date, Anna sought leave to amend her first amended complaint to add Placer Title Company and escrow officer Michelle Szura as defendants. Wells Fargo opposed the motion. The trial court denied the motion, ruling that the motion was filed and served late, and that Anna did not show that the identities of Placer Title Company and Szura were unknown to her at the time she filed her original complaint.

Wells Fargo moved for summary judgment or, in the alternative, summary adjudication, arguing that Anna ratified the loan, she cannot establish a cause of action for cancellation because she never offered to restore the consideration she received from Wells Fargo, and she cannot establish that Wells Fargo caused her alleged damages. The trial court agreed with Wells Fargo and granted the motion for summary judgment.

STANDARD OF REVIEW

A defendant moving for summary judgment or summary adjudication may demonstrate that the plaintiff's cause of action has no merit by showing that (1) one or more elements of the cause of action cannot be established, or (2) there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subds. (a), (f)(1), (p)(2); *Aguilar, supra,* 25 Cal.4th at p. 849.) Such a showing must be supported by evidence, such as affidavits, declarations, admissions, interrogatory answers, depositions, and matters of which judicial notice must or may be taken. (Code Civ. Proc., § 437c, subd. (b)(1); *Aguilar, supra*, 25 Cal.4th at pp. 850, 855.)

7

After the defendant meets its threshold burden, the burden shifts to the plaintiff to present evidence showing that a triable issue of one or more material facts exists as to that cause of action or affirmative defense.  (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar, supra*, 25 Cal.4th at p. 850.)  The plaintiff may not simply rely on the allegations of its pleadings but, instead, must set forth the specific facts showing the existence of a triable issue of material fact.  (Code Civ. Proc., § 437c, subd. (p)(2).)  A triable issue of material fact exists if, and only if, the evidence reasonably permits the trier of fact to find the contested fact in favor of the plaintiff in accordance with the applicable standard of proof.  (*Aguilar, supra*, 25 Cal.4th at p. 850.)  From commencement to conclusion, however, the moving defendant bears the burden of persuasion that one or more elements of the cause of action in question cannot be established or that there is a complete defense.  (*Ibid.*)

In ruling on the motion, the trial court must consider all of the evidence set forth in the papers, except that to which objections have been made and sustained by the trial court, and all inferences reasonably deducible from the evidence.  (Code Civ. Proc., § 437c, subd. (c).)  The trial court views the evidence and inferences therefrom in the light most favorable to the opposing party, liberally construing the opposing party's evidence while strictly scrutinizing the moving party's showing and resolving any evidentiary doubts or ambiguities in favor of the opposing party.  (*Aguilar, supra*, 25 Cal.4th at p. 843; *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768 (*Saelzler*).)  The trial court must determine what the evidence or inference could show or imply to a reasonable trier of fact.  (*Aguilar, supra*, 25 Cal.4th at p. 856.)  If the trial court concludes that the evidence or inferences raise a triable issue of material fact, it must deny the defendant's motion.  (*Ibid.*)  But the trial court must grant the defendant's motion if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c).)

We review an order granting summary judgment or summary adjudication de novo. (*Aguilar, supra*, 25 Cal.4th at p. 860.) We independently examine the record to determine whether a triable issue of material fact exists. (*Saelzler, supra,* 25 Cal.4th at p. 767.)

## DISCUSSION

## I

Anna contends she did not subsequently ratify the Wells Fargo loan by making payments on the loan and by affirming the loan in her bankruptcy petition.

Wells Fargo moved for summary judgment based on ratification. According to Anna, ratification requires that the principal have full knowledge of all of the facts. She says there are triable issues of fact as to whether she knew her rights, or what had been done in her name, when she made the loan payments to Wells Fargo or affirmed the debt in the bankruptcy proceeding.

"Ratification is the voluntary election by a person to adopt in some manner as his own an act which was purportedly done on his behalf by another person, the effect of which, as to some or all persons, is to treat the act as if originally authorized by him." (*Rakestraw v. Rodrigues* (1972) 8 Cal.3d 67, 73 (*Rakestraw*).) Ratification may be express or by conduct which is inconsistent with any reasonable contention other than that the person intended to approve and adopt the act. (*Id.* at p. 73; *Common Wealth Ins. Systems, Inc. v. Kersten* (1974) 40 Cal.App.3d 1014, 1026.) It requires knowledge of the material facts. (*Rakestraw, supra,* 8 Cal.3d at p. 74; *Golinsky v. Allison* (1896) 114 Cal. 458, 461.) But voluntary retention of benefits of the transaction with knowledge of the unauthorized nature of the act also constitutes ratification. (*Common Wealth Ins. Systems, Inc. v. Kersten, supra,* 40 Cal.App.3d at p. 1026.)

Here, with the loan proceeds from Wells Fargo, the Fenskes obtained title to the property in 2006.[3] They also received over $1,300 at the close of escrow. Anna continued to live at the property after the payments stopped. Thus, Anna derived benefits from the loan transaction she now seeks to set aside, and retained those benefits even after she was aware the loan proceeds came from a transaction she asserts is improper.

In addition, the Fenskes made full payments on the loan for many months. Anna's bankruptcy petition acknowledged that Wells Fargo held a mortgage for $358,400 secured by the property, and she did not identify the causes of action against Wells Fargo in her bankruptcy petition.

Anna complains that the loan she received was not the loan for which she applied, and was not the loan that was promised. But Anna knew that fact when she received the first loan statement, and yet she continued to make monthly payments and continued to retain the benefits of the loan.

Anna argues that she continued to make payments because she believed, based on King's promise, that Wells Fargo would correct the loan terms. She says she made the mortgage payments in order to mitigate her losses. But she does not provide a record citation for the asserted facts. (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856.) Our review of the record indicates that the Fenskes elected to make the full monthly loan payments to Wells Fargo until they could obtain a new loan.

---

[3] Although Anna said she disputed the facts set forth in Wells Fargo's separate statement, her response often did not refute Wells Fargo's asserted facts. For example, in separate statement of fact No. 2, Wells Fargo said the Fenskes used the loan from Wells Fargo to buy the property. Anna disputed that fact, but in response said the loan and its terms were procured by fraud and that Boyd represented the Fenskes would receive one loan for the full purchase price of the property. Anna then identifies five documents containing forged signatures. None of Anna's stated facts contradicts Wells Fargo's statement that the Fenskes used the proceeds from the Wells Fargo loan to purchase the property.

Ratification of the loan transaction in part constitutes a ratification of the entire transaction. (*Rakestraw, supra,* 8 Cal.3d at p. 76; see also *Reusche v. California Pac. Title Ins. Co.* (1965) 231 Cal.App.2d 731, 737 (*Reusche*) ["A principal cannot split an agency transaction and accept the benefits thereof without the burdens."].) On this record, the trial court did not err in ruling that Anna ratified the Wells Fargo loan.

## II

Anna next contends she can prove Wells Fargo's fraudulent conduct caused the Fenskes to default on the loan.

Although Anna's second cause of action is titled "fraud and statutory violations," it is really a claim for fraud. It does not state any claim under the Truth in Lending Act (15 U.S.C. § 1601 et seq.) or the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.).

In any event, it does not matter whether Anna can raise a triable issue with regard to causation, because as we have explained in part I, *ante*, Anna subsequently ratified the loan. We treat the loan as if originally authorized by the Fenskes as a result of the ratification. (*Rakestraw, supra*, 8 Cal.3d at p. 73.) Accordingly, her appellate contention lacks merit.

## III

Anna further argues it is appropriate for her to seek cancellation of the loan documents without returning the loan proceeds.

California law distinguishes between fraud in the execution of a contract and fraud in the inducement of a contract. (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 415.) Fraud in the execution of a contract occurs when the plaintiff is deceived as to the nature of her act and does not know what she is signing or does not intend to enter into a contract at all. (*Ibid.*) In such case, the contract is void. Fraud in the inducement, by contrast, occurs when the plaintiff knows what she is signing but her consent is induced by fraud. (*Ibid.*) In that case, a contract is formed but is

11

voidable by reason of the fraud. (*Ibid.; Village Northridge Homeowners Assn. v. State Farm Fire & Casualty Co*. (2010) 50 Cal.4th 913, 921.)

An action to cancel a written instrument is equitable in nature. (11A Cal.Jur.3d (2007) Cancellation and Reformation, § 1, p. 9.) In general, a plaintiff who chooses to maintain an action to cancel an instrument tainted by fraud must return the value of the property she has received. (*Buena Vista F. & V. Co. v. Tuohy* (1895) 107 Cal. 243, 253-256; *Red Jacket Tribe v. Gibson* (1886) 70 Cal. 128, 131; *Loud v. Luse* (1931) 214 Cal. 10, 13-14.) The rule requiring the plaintiff to restore benefits received applies to the cancellation of a contract that is voidable. (*Fleming v. Kagan* (1961) 189 Cal.App.2d 791, 797; 11A Cal.Jur.3d, *supra*, Cancellation and Reformation, § 26, pp. 44-45.) The rule does not apply to the cancellation of an instrument that is void. (*Meyer v. Haas* (1899) 126 Cal. 560, 562-563; *Smith v. Williams* (1961) 55 Cal.2d 617, 620-621; *Fleming v. Kagan, supra,* 189 Cal.App.2d at p. 797; 11A Cal.Jur.3d, *supra*, Cancellation and Reformation, § 27, p. 46.)

In her first cause of action, Anna seeks to cancel the Wells Fargo promissory note and deed of trust. While she says the signatures for her and Robert on the loan application were forged,[4] Anna acknowledges she and Robert applied for a home loan with Wells Fargo. The Fenskes obtained a loan with Wells Fargo. Anna benefited from that loan. Anna, thus, does not claim that she did not know she signed documents to borrow money from Wells Fargo or that she did not intend to take a loan from Wells Fargo. She claims instead that prior to the close of escrow, King said he would change

---

[4] Anna also says the signatures on a document relating to closing instructions for the second loan for $89,600, a deed of trust in favor of DB Home Lending, and a "Balloon Note" are forged. It is unclear from the referenced deposition testimony whether the balloon note relates to the Wells Fargo loan or to the loan from DB Home Lending. However, the document identified as a balloon note was presented to Anna along with other documents apparently relating to the DB Home Lending loan.

the loan terms to the terms Boyd promised, she and Robert signed the loan documents in reliance on King's assurance, but the loan terms were not changed. Accordingly, Anna's claim is one for fraud in the inducement. For that reason, the general rule applies requiring restoration of the benefits received. (*Fleming v. Kagan, supra,* 189 Cal.App.2d at p. 797.) Anna does not establish her claim of error because the record contains no evidence that she tendered or offered to tender the benefits she received pursuant to the Wells Fargo loan.

We do not address the various contentions in the appellate briefs concerning rescission because Anna denies her first cause of action is for rescission. For the same reason, Civil Code section 1693, referenced by Anna's counsel in her reply brief and at oral argument, does not apply to this case. Civil Code section 1693 applies to an action based on rescission.

IV

Anna further contends she should have been permitted to amend her complaint to add Placer Title Company and escrow officer Michelle Szura as defendants.

About two and a half months before the trial date, Anna moved, pursuant to Code of Civil Procedure sections 473 and 576, to amend her first amended complaint to name Placer Title and Szura as defendants in her fraud cause of action. The proposed second amended complaint would allege that Placer Title Company and Szura knowingly and falsely represented to the Fenskes that their Wells Fargo loan was a 30-year "fully amortized" loan, at a fixed interest rate, with monthly payments of $2,128; that Placer Title Company and Szura induced the Fenskes to sign inaccurate and incomplete loan documents and generated false loan documents; and that Anna relied on the representations and was damaged thereby.

Wells Fargo opposed Anna's motion. Among other things, Wells Fargo argued that Anna had known the identities of Placer Title Company and Szura since 2006. In her

13

reply brief filed in the trial court, Anna did not deny this.  The trial court denied Anna leave to amend.**5**

Anna claims it was error for the trial court to consider whether she knew the identities of Placer Title Company and Szura.  Anna says the trial court should have considered whether the proposed amendment would further the interests of justice and whether Placer Title Company and Szura would suffer prejudice by the proposed amendment.

The trial court may, in furtherance of justice, and on any terms as may be proper, allow a party to amend any pleading by adding the name of any party. (Code Civ. Proc., §§ 473, subd. (a)(1), 576.)  While amendments should be liberally allowed so that all of the issues may be properly presented, the question whether the filing of an amended pleading should be allowed is committed to the sound discretion of the trial court.  (Code Civ. Proc., § 473, subd. (a)(1); *Emerald Bay Community Assn. v. Golden Eagle Ins. Corp.* (2005) 130 Cal.App.4th 1078, 1097 (*Emerald Bay Community Assn.*).)

"Courts must apply a policy of great liberality in permitting amendments to the complaint at any stage of the proceedings, up to and including trial, when no prejudice is shown to the adverse party. [Citation.]  However, ' "even if a good amendment is proposed in proper form, unwarranted delay in presenting it may -- of itself -- be a valid reason for denial." ' [Citation.]" (*Huff v. Wilkins* (2006) 138 Cal.App.4th 732, 746.)  The appropriate exercise of the trial court's discretion under section 473 " 'requires the trial court to consider a number of factors:  "including the conduct of the moving party and the belated presentation of the amendment.  [Citation.] . . . The law is well settled that a long deferred presentation of the proposed amendment without a showing of excuse for the delay is itself a significant factor to uphold the trial court's denial of the

**5** We do not discuss the portion of the trial court's ruling based on inadequate notice because there is no contention on appeal concerning that issue.

14

amendment.  [Citation.]"  [Citation.]' " (*Emerald Bay Community Assn., supra*, 130 Cal.App.4th at p. 1097, italics omitted.)  Appellate courts are less likely to find an abuse of discretion where amendment is sought after long unexplained delay or where there is a lack of diligence.  (*Melican v. Regents of University of California* (2007) 151 Cal.App.4th 168, 175.)

Here, Anna's trial counsel submitted a declaration in support of Anna's motion for leave to amend, stating that the identities of, and the fraud practiced by, Placer Title Company and Szura were previously unknown to Anna.  However, Anna's original complaint filed on July 14, 2009 (17 months before Anna filed the motion for leave to amend), identified Placer Title Company.  Anna's declaration in support of her application for injunctive relief, filed in the trial court on September 17, 2009, said Placer Title Company was the title company which handled the escrow on the purchase of the property.  The reply brief Anna filed in the trial court with regard to her motion for leave to amend did not deny that Anna knew Szura was the escrow officer when she filed her original complaint in 2009.

With regard to the proposed allegations that Placer Title Company and Szura knowingly and falsely misrepresented the terms of the Wells Fargo loan and generated false documents, Anna alleged the verbal representations were made to her just before and at the time of the closing of escrow, which occurred in November 2006.  Anna alleged in her initial complaint that she discovered she did not have a 30-year fully amortized fixed rate loan in August 2008 and she had a copy of the promissory note she now claims was forged in May 2009.  In her opposition to Wells Fargo's motion for relief from automatic stay, filed on February 3, 2009, Anna said there was evidence of wrongdoing -- coercion, undue influence, undue pressure, collusion and fraud in acknowledging the Fenskes' signatures -- by the escrow officer.  Anna suggested the escrow officer falsely acknowledged that Anna signed the loan origination documents.  Thus, Anna knew of alleged wrongdoing by Szura as early as February 2009.  The record

15

also contains a declaration from Anna that she first raised the issue of forgery with Wells Fargo in September 2008, which is more than two years before she sought leave to amend. Additionally, Anna's September 2009 declaration for injunctive relief alleged the signatures on documents including a deed of trust in favor of Wells Fargo were forged. Anna attached the deed containing the alleged forged signatures to her September 2009 declaration. That deed identifies M. Szura as the person who notarized the Fenskes' signatures on the deed. Further, as of July 14, 2009, Anna's attorney had obtained various "loan documents" from "the title company" and he questioned the authenticity of the signatures on different documents purportedly signed by Anna in front of the same notary (Szura) at Placer Title Company. Anna's initial complaint further alleged that the escrow officer presented the Fenskes with unstapled papers dated with an earlier date, which were in no perceivable order, and did not provide the Fenskes copies of documents that should have been a part of the loan documentation.

There is no explanation in the record why Anna delayed at least 17 months to seek leave to amend her complaint to name Placer Title Company and Szura as defendants. Anna has not demonstrated that the trial court abused its discretion in denying her leave to amend.

DISPOSITION

The judgment is affirmed.

       MAURO       , J.

We concur:

       HULL       , Acting P. J.

       BUTZ       , J.

16